No. 15,403.

KOSCOVE *v.* KOSCOVE
(156 P. [2d] 696)

Decided February 26, 1945.

Mr. EDWARD H. SHERMAN, for plaintiff in error.

Messrs. QUIAT, GINSBERG & CREAMER, for defendant in error.

*En Banc.*

MR. JUSTICE KNOUS delivered the opinion of the court.

THE parties appear here in the same relative positions as in the trial court and herein we shall refer to them respectively as plaintiff and defendant. The parties were married in Russia on March 28, 1898. In 1942 plaintiff instituted against the defendant, in the district court of the City and County of Denver, Colorado, the action for separate maintenance here in consideration. In his answer to the complaint therein, defendant pleaded a final decree of divorce granted to him in an

action against plaintiff in the second judicial district court of Washoe county, Nevada, on February 18, 1939, and denied that since said date he was or had been the husband of plaintiff. According to the return appearing in the judgment roll of the Nevada proceeding, constructive service was had upon plaintiff by delivering to her, in El Paso county, Colorado, copies of the Nevada summons and complaint. Admittedly she was not personally served in Nevada and did not appear in the suit there, either in person or by attorney. As a further defense, defendant asserted that by virtue of a decree in a partition suit between the parties entered by the district court of Fremont county, Colorado, on February 18, 1938, plaintiff was estopped from maintaining an action for additional allowances for her support. Plaintiff's replication alleged that the domicile of the parties had continually been, for approximately forty years, in Colorado and never had been changed or abandoned; that defendant had never established a bona fide domicile in Nevada, nor intended to, and that defendant's purported claim of domicile in Nevada was "a fraud and sham under the laws of both Nevada and Colorado." On both factual and legal grounds the replication further challenged the validity of the purported service upon plaintiff in Colorado of process in the Nevada action, and, in addition, put in issue questions as to whether the Nevada divorce decree, if valid, or the partition decree in Colorado, prevented granting the relief sought by plaintiff.

At the trial, in the procedural sequence arranged at a pre-trial conference, the district court, over the objection of defendant, heard evidence pertaining to the bona fides of defendant's alleged domicile in Nevada and found therefrom, as matters of fact, that defendant "went to Nevada for no other purpose than to secure a divorce, to establish a statutory residence for at least six weeks for that purpose, and that he left there with the intention of returning to Colorado after his divorce

case in Nevada; that he never intended to stay there or make that his home or his residence or his domicile; that he went there purely and simply for that purpose (getting a divorce); that his acts as proven show this, and his evidence shows this." Notwithstanding these pronounced convictions as to the weight of the evidence on this point, the district court, with expressed reluctance, decided that the comparatively recent decision of the United States Supreme Court in *Williams v. North Carolina,* 317 U. S. 287, 63 Sup. Ct. 207, 87 L. Ed. 279, 143 A.L.R. 1273, precluded any inquiry by a Colorado court into the fact findings of the Nevada court on jurisdictional matters and compelled the conclusive recognition of the Nevada decree by Colorado under the "full faith and credit" clause of the federal Constitution and the congressional acts grounded thereon (Art. IV, §1; 28 U. S. C. A. §687). Having so determined that it was bound to hold that the marriage relationship had been terminated by the Nevada decree of divorce, the court dismissed the separate maintenance proceeding upon the ground that a cause of action therefor does not lie where the parties are not husband and wife. *Kiefer v. Kiefer,* 4 Colo. App. 506, 36 Pac. 621. In this disposition as naturally would follow, issues relating to the merits of the separate maintenance proceeding were not considered or determined by the district court.

Plaintiff, who prosecutes this writ of error, contends, inter alia, that the decision in *Williams v. North Carolina, supra,* which it is argued the district court erroneously construed, *does not* foreclose a Colorado court from inquiring into the bona fides of the domicile of a party obtaining a Nevada divorce, in determining the full faith and credit to be given it, and *does not* abrogate the rule that a foreign divorce decree entered on constructive service is invalid, if obtained by one not bona fide domiciled within the jurisdiction of the court granting the divorce.

We are convinced these contentions are sound.

In the Williams case the decision was based upon the assumption that the petitioners there had a bona fide domicile in Nevada. In direct opposition, in the case at bar, plaintiff charges that defendant was not bona fide domiciled in Nevada at the time he procured his divorce from her. The restricted scope of the Williams decision is made to appear clearly from the following language of the opinion, at page 302: "In the first place, we repeat that in this case we must assume that petitioners had a bona fide domicile in Nevada, not that the Nevada domicile was a sham. We thus have no question on the present record whether a divorce decree granted by the courts of one state to a resident as distinguished from a domiciliary is entitled to full faith and credit in another state. Nor do we reach here the question as to the power of North Carolina to refuse full faith and credit to Nevada divorce decrees because, contrary to the findings of the Nevada court, North Carolina finds that no bona fide domicile was acquired in Nevada." Thus, notwithstanding the repercussive effect upon some antecedent legalistic tests of the validity of foreign divorce decrees arising from the express overruling of *Haddock v. Haddock,* 201 U. S. 562, 26 Sup. Ct. 525, 50 L. Ed. 867, 5 Ann. Cas. 1, by *Williams v. North Carolina, supra,* we are satisfied the latter decision did not disturb the pre-existing rule that a court of a state within whose jurisdiction neither one of the parties to a divorce suit is bona fide domiciled, has no jurisdiction to render a divorce decree which would be binding in other states under the full faith and credit provision of the federal Constitution. Corolarially, it is evident, as stated in the opinion in *Bowditch v. Bowditch,* 314 Mass. 410, 50 N. E. (2d) 65, at page 68: "As we interpret the decision under discussion, [*Williams v. North Carolina, supra*], we are of opinion that it is still competent for the courts of other states to inquire into the validity of a divorce so far, at least, as its validity depends upon the jurisdiction of

the state where the divorce was granted, and that a domicile by one of the parties in the state in which the divorce was granted is essential to jurisdiction."

That such rule is still alive, and the doctrine invokable, has been generally recognized by courts of last resort in sister states in the following cases, all of which have been decided since the announcement of the Williams case, supra, viz.: *Atkins v. Atkins,* 386 Ill. 345, 54 N. E. (2d) 488; *Wilkes v. Wilkes,* 245 Ala. 54, 16 S. (2d) 15; *Coe v. Coe,* 316 Mass. 423, 55 N.E. (2d) 702; *Commonwealth ex rel. v. Esenwein,* 348 Pa. 455, 35 A. (2d) 335; *Mascola v. Mascola,* 134 N.J.E. 48, 33 A. (2d) 864; *In re Lindgren's Estate,* 293 N.Y. 18, 55 N.E. (2d) 849, 153 A.L.R. 936. See, also, *Crouch v. Crouch,* 63 Cal. App. (2d) 747, 149 P. (2d) 437; *Keller v. Keller,* 352 Mo. 877, 179 S.W. (2d) 728 (rule recognized but Nevada decree upheld because question of husband's domicile had been litigated and decided by Nevada court with both parties participating in the trial), and annotations 153 A.L.R. 941 supplementing 140 A.L.R. 914, 109 A.L.R. 1018 and 122 A.L.R. 1321. Concerning the general effect of *Williams v. North Carolina, supra,* see, also, annotation in 143 A.L.R. 1294, supplementing those in 39 A.L.R. 603 and 86 A.L.R. 1329.

██ ██ In the area of attack on foreign divorce decrees reserved by the Williams opinion as aforesaid and within which the pleadings and facts place the case at bar, the ruling of the United States Supreme Court in *Bell v. Bell,* 181 U.S. 175, 21 Sup. Ct. 551, 45 L. Ed. 804, is decisive. Therein it was held that a decree of divorce was not entitled to full faith and credit where it had been granted on constructive service by a court of a state in which neither spouse was domiciled. Likewise, that authority decided that the mere fact that the Nevada judgment of divorce recited that such court had jurisdiction is not conclusive on the question of domicile and may be contradicted collaterally on that issue. See, also *Crouch v. Crouch; Commonwealth v. Esen-*

*wein,* and *Bowditch v. Bowditch, supra.* Nor does the circumstance, if here true, that plaintiff was served personally with process in the Nevada divorce action at her residence in Colorado, alter the application of the principle of *Bell v. Bell, supra, Streitwolf v. Streitwolf,* 181 U. S. 179, 21 Sup. Ct. 553, 45 L. Ed. 807. A like result by inverse reasoning was announced in *Atherton v. Atherton,* 181 U. S. 155, 21 Sup. Ct. 544, 45 L. Ed. 794. While certain of our pronouncements in *Davis v. Davis,* 70 Colo. 37, 197 Pac. 241, grounded on the authority of ·overruled *Haddock v. Haddock, supra,* may be rendered obsolescent by the Williams decision, the statement in the opinion in the Davis case, supra, p. 41, that: "Even against the full faith and credit clause it is permitted to assail the jurisdiction of a court of another state and to prove facts which negative the same," is still in point on the question in ·consideration.

■ The evidence adduced at the Colorado trial disclosed that immediately following their emigration from Russia to the United States the couple located in El Paso county, Colorado, and lived there for about eight years and then moved to Canon City in Fremont county, Colorado, where they resided for a ·considerable number of years. In 1932 the parties were separated, according to the plaintiff, by defendant's desertion, and since have not lived together. Following the separation the plaintiff has resided continuously in Fremont, El Paso and Denver counties in this state, while soon thereafter defendant took up his abode at Westcliffe, Custer county, Colorado, where he resided during the ten or fifteen years preceding his _departure for Nevada in 1938 on the venture in question. Defendant arrived in Reno on December 4, 1938. In six weeks to the day after his advent there he filed his suit for ·divorce, in which decree was entered on ·February 18, 1939. About two weeks thereafter he returned to Westcliffe, Colorado, where he since has resided. While in Nevada he lived at the Overland Hotel in Reno. As a witness, defendant

admitted that when he left for Nevada he took no baggage or personal effects with him, but left such in the room in Westcliffe in which he had lived for a long time and to which he returned after his sojourn in Nevada; that upon leaving Colorado he purchased a round-trip ticket on the bus; that he retained his bank account in Colorado and established none in Nevada and did no work or business in the latter state. It also was testified that in his 1938 and 1939 income tax returns, state and federal, defendant represented that his home was in Westcliffe, Colorado; that on February 22, 1939, four days after the date of the Nevada decree, upon an application stating that defendant was a resident of Westcliffe, a Colorado automobile license was issued to him. Defendant admitted that he voted in Westcliffe in the 1938 and 1940 elections. In the registration for the first of such elections defendant's residence was "vouched for" by the deputy county clerk on September 12, or November 3, 1938, and for the second defendant registered personally. From other evidence it might be inferred soundly that during defendant's stay in Nevada his business affairs in Colorado proceeded in the pattern of the past. Manifestly, considering this testimony, it cannot be said properly that the trial court was without evidentiary support in finding that the jurisdictional fact of a Nevada domicile was lacking to defendant. "The essential fact that raises a change of abode to a change of domicile is the absence of any intention to live elsewhere, Story on Conflict of Laws, §43, — or, as Mr. Dicey puts it in his admirable book, 'the absence of any present intention of not residing permanently or indefinitely in' the new abode. Conflict of Laws, 2d ed. 111." *Williamson v. Osenton,* 232 U. S. 619, 624, 34 Sup. Ct. 442, 58 L. Ed. 758. "The intention required for the acquisition of a domicile of choice is an intention to make a home in fact, * * *." Restatement of the Law—Conflict of Laws, §19; *Commonwealth v. Esenwein, supra.* It is of interest to observe that the

decision in the case last above cited and to a major degree that in *Atkins v. Atkins, supra,* affirmed nisi holdings decreeing the shamness of the domiciles in Nevada of the divorced plaintiffs therein, upon the basis of the testimony of such parties in the *Nevada court* as it appeared in transcripts thereof almost identical with the one accompanying the Nevada judgment in the case at bar.

For the reasons given we are of the opinion that upon the facts found, the Nevada decree of divorce here in question was not entitled to full faith and credit in Colorado, and that the trial court was wrong in determining that it was precluded from so holding by *Williams v. North Carolina, supra.*

In their presentation here counsel for defendant argue that plaintiff is estopped by laches from challenging the validity of the Nevada divorce. Obviously, in the original disposition below this matter was not a factor. Nor was the objection pleaded, but counsel say this is unnecessary under our holding in *Hughes v. Leonard,* 66 Colo. 500, 181 Pac. 200, as well as under the Rules of Civil Procedure, where the claim of fraudulence of defendant's Nevada domicile was not injected until the replication was filed. Without expressing or intimating any view whatsoever as to either the availability or the validity of this plea, we mention the matter only to indicate that the reversal herein ordered shall not preclude the district court in subsequent proceedings from giving such consideration to the question as it may consider warranted.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.

MR. JUSTICE HILLIARD not participating.