# SIMONS *v.* MIAMI BEACH FIRST NATIONAL BANK, EXECUTOR.

No. 363.   Argued March 10, 1965.—Decided May 3, 1965.

*Robert C. Ward* argued the cause for petitioner.   On the brief was *William Gresham Ward.*

*Marion E. Sibley* argued the cause for respondent. With him on the brief was *Irving B. Levenson.*

Mr. Justice Brennan delivered the opinion of the Court.

The question to be decided in this case is whether a husband's valid Florida divorce, obtained in a proceeding wherein his nonresident wife was served by publication only and did not make a personal appearance, unconstitutionally extinguished her dower right in his Florida estate.

The petitioner and Sol Simons were domiciled in New York when, in 1946, she obtained a New York separation decree that included an award of monthly alimony. Sol Simons moved to Florida in 1951 and, a year later, obtained there a divorce in an action of which petitioner had valid constructive notice but in which she did not enter a personal appearance.[1] After Sol Simons' death in Florida in 1960, respondent, the executor of his estate, offered his will for probate in the Probate Court of Dade County, Florida. Petitioner appeared in the proceeding and filed an election to take dower under Florida law, rather than have her rights in the estate governed by the terms of the will, which made no provision for her.[2] The respondent opposed the dower claim, asserting that since Sol Simons

---

[1] Petitioner was served by publication while still living in New York and received copies of the order for publication and the divorce complaint. She did not enter an appearance in the Florida proceeding on advice of counsel.

[2] 21 Fla. Stat. Ann. 1964, § 731.34 provides as follows:

"Whenever the widow of any decedent shall not be satisfied with the portion of the estate of her husband to which she is entitled under the law of descent and distribution or under the will of her husband, or both, she may elect in the manner provided by law to take dower, which dower shall be one third in fee simple of the real property which was owned by her husband at the time of his death or which he had before conveyed, whereof she had not relinquished her right of dower as provided by law, and one third part absolutely of the personal property owned by her husband at the time of his death . . . ."

had divorced petitioner she had not been his wife at his death, and consequently was not entitled to dower under Florida law. Petitioner thereupon brought the instant action in the Circuit Court for Dade County in order to set aside the divorce decree and to obtain a declaration that the divorce, even if valid to alter her marital status, did not destroy or impair her claim to dower. The action was dismissed after trial, and the Florida District Court of Appeal for the Third District affirmed. 157 So. 2d 199.[3] The Supreme Court of Florida declined to review the case, 166 So. 2d 151. We granted certiorari, 379 U. S. 877. We affirm.

Petitioner's counsel advised us during oral argument that he no longer challenged the judgment below insofar as it embodied a holding that the 1952 Florida divorce was valid and terminated the marital status of the parties. We therefore proceed to the decision of the question whether the Florida courts unconstitutionally denied petitioner's dower claim.[4]

---

[3] Petitioner attacked the validity of the divorce on the grounds: (1) that Sol Simons had defrauded the Florida courts by falsely claiming residence, (2) that the New York decree was a bar to the divorce suit and that Sol Simons had defrauded the court by failing to disclose the prior New York decree, (3) that the divorce decree on its face showed want of jurisdiction and (4) that after petitioner received notice of the divorce suit Sol Simons lulled her into inaction. The trial court made findings of fact adverse to petitioner on all points and dismissed the suit with prejudice. In affirming, the Florida District Court of Appeal held that "[t]he prior New York separate maintenance decree was not a bar to a divorce suit by the husband, and his failure to disclose it in his complaint was not a fraud on the court. . . . Any affirmative defense the prior suit may have afforded should have been presented in the divorce suit." 157 So. 2d 199, at 200.

[4] Neither the Florida trial court nor the District Court of Appeal expressly discussed the merits of petitioner's claim that the divorce, even if valid, did not destroy or impair her dower rights. But since Florida law allows dower only to a decedent's wife, see note 6, *infra*,

Petitioner argues that since she had not appeared in the Florida divorce action the Florida divorce court had no power to extinguish any right which she had acquired under the New York decree. She invokes the principle of *Estin* v. *Estin*, 334 U. S. 541, where this Court decided that a Nevada divorce court, which had no personal jurisdiction over the wife, had no power to terminate a husband's obligation to provide the wife support as required by a pre-existing New York separation decree. As this was so, we there ruled that New York, in giving continued effect to the maintenance provisions of its separation decree, did not deny full faith and credit to the Nevada decree. See U. S. Const., Art. IV, § 1.[5] The application of the *Estin* principle to the instant case, petitioner contends, dictates that we hold the Florida courts to their constitutional duty to give effect to the New York decree, inherent in which is a preservation of her dower right.

The short answer to this contention is that the only obligation imposed on Sol Simons by the New York decree, and the only rights granted petitioner under it, concerned monthly alimony for petitioner's support. Unlike the ex-husband in *Estin*, Sol Simons made the support payments called for by the separate maintenance decree notwithstanding his *ex parte* divorce. In making these payments until his death he complied with the full measure of the New York decree; when he died there was consequently nothing left of the New York decree for Florida to dishonor.

This conclusion embodies our judgment that there is nothing in the New York decree itself that can be construed as creating or preserving any interest in the nature

we interpret the Florida courts' decisions sustaining the validity of the divorce as also holding that the divorce extinguished petitioner's dower rights.

[5] "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. . . ."

of or in lieu of dower in any property of the decedent, wherever located. Petitioner refers us to no New York law that treats such a decree as having that effect, or, for that matter, to any New York law that has such an effect irrespective of the existence of the decree. We think it clear that the burden of showing this rested upon petitioner. Cf. *State Farm Ins. Co.* v. *Duel,* 324 U. S. 154, 160; *Alaska Packers Assn.* v. *Industrial Accident Comm'n,* 294 U. S. 532, 547–548. It follows that insofar as petitioner's argument rests on rights created by the New York decree or by New York law, the denial of her dower by the Florida courts was not a violation of the Full Faith and Credit Clause. Cf. *Armstrong* v. *Armstrong,* 350 U. S. 568.

Insofar as petitioner argues that since she was not subject to the jurisdiction of the Florida divorce court its decree could not extinguish any dower right existing under Florida law, *Vanderbilt* v. *Vanderbilt,* 354 U. S. 416, 418, the answer is that under Florida law no dower right survived the decree. The Supreme Court of Florida has said that dower rights in Florida property, being inchoate, are extinguished by a divorce decree predicated upon substituted or constructive service. *Pawley* v. *Pawley,* 46 So. 2d 464.[6]

---

[6] In *Pawley* the Supreme Court of Florida distinguished the dower right from the right to support, saying at 46 So. 2d 464, 472–473, n. 2:

"In this, if not in every jurisdiction, right of dower can never be made the subject of a wholly independent issue in any divorce suit. It stands or falls as a result of the decree which denies or grants divorce. It arises upon marriage, as an institution of the law. The inchoate right of dower has some of the incidents of property. It partakes of the nature of a lien or encumbrance. It is not a right which is originated by or is derived from the husband; nor is it a personal obligation to be met or fulfilled by him, but it is a creature of the law, is born at the marriage altar, cradled in the bosom of the marital status as an integral and component part thereof, survives

It follows that the Florida courts transgressed no constitutional bounds in denying petitioner dower in her ex-husband's Florida estate.

*Affirmed.*

MR. JUSTICE HARLAN, concurring.

I am happy to join the opinion of the Court because it makes a partial retreat from *Vanderbilt* v. *Vanderbilt*, 354 U. S. 416, a decision which I believe must eventually be rerationalized, if not entirely overruled.

The *Vanderbilt* case was this. The Vanderbilt couple was domiciled in California. Mr. Vanderbilt went to Nevada, established a new domicile, and obtained an *ex parte*[1] divorce decree which did not provide for alimony payments to Mrs. Vanderbilt. In the meantime Mrs. Vanderbilt went to New York. After the Nevada decree had become final, she sued in New York for support under New York law, sequestering Mr. Vanderbilt's property located there. New York ordered support payments, rejecting full-faith-and-credit arguments based on

during the life of the wife as such and finds its sepulcher in divorce. Alimony too is an institution of the law but it is a personal obligation of the husband which is based upon the duty imposed upon him by the common law to support his wife and gives rise to a personal right of the wife to insist upon, if she be entitled to, it. It has none of the incidents of, and is in no sense a lien upon or interest in, property. Consequently, the right of the wife to be heard on the question of alimony should not, indeed lawfully it cannot, be destroyed by a divorce decree sought and secured by the husband in an action wherein only constructive service of process was effected."

A petition for writ of certiorari to this Court alleged, "Petitioner is thus permitted to file another suit for alimony, but her contract of marriage is annulled and her inchoate dower rights destroyed without due process of law." Brief for petitioner, p. 9, *Pawley* v. *Pawley*, No. 325, October Term, 1950. The petition was denied, 340 U. S. 866.

[1] *"Ex parte"* throughout this opinion is used to denote a situation in which the divorce court has not obtained personal jurisdiction over the defendant spouse.

the Nevada decree. Over dissents by Mr. Justice Frank-
furter and myself (354 U. S., at 419, 428) the Court
affirmed the New York award, holding that because the
Nevada court had no personal jurisdiction over Mrs. Van-
derbilt, "the Nevada decree, to the extent it purported
to affect the wife's right to support, was void . . . ."
354 U. S., at 419.

Two rules emerged from the case, neither of which, I
suggest with deference, commends itself: (1) an *ex parte*
divorce can have no effect on property rights; (2) a State
in which a wife subsequently establishes domicile can
award support to her regardless of her connection with
that State at the time of the *ex parte* divorce and regard-
less of the law in her former State of domicile.[2]

The first rule slips unobtrusively into oblivion in
today's decision, for Florida is allowed to turn property
rights on its *ex parte* decree. A concurrence disputes
this, but I do not understand how the Court's language in
this case can be read as anything less. If I may para-
phrase only slightly, the Court says, "Insofar as peti-
tioner argues that since she was not subject to the juris-
diction of the Florida divorce court, its decree could not

---

[2] The *Vanderbilt* result might have been proper on any of three
grounds. (1) If New York was Mrs. Vanderbilt's State of domicile at
the time of the *ex parte* Nevada divorce, New York law investing
a wife with support rights should not be overborne by an *ex parte*
decree in another State. (2) If California was Mrs. Vanderbilt's
domicile at the time of the Nevada divorce and under California
law support could have been awarded, New York should also be free
(though not bound) to award support. (3) If Mr. Vanderbilt owned
property in New York at the time of the *ex parte* divorce, New York
might arguably be free to hold that ownership of New York property
carries with it the obligation to support one's wife, at least to the
extent of the value of that property.

The Court did not concern itself with the location of Mrs. Van-
derbilt's domicile or Mr. Vanderbilt's property at the time of the
Nevada divorce.

extinguish any dower right existing under Florida law, *Vanderbilt v. Vanderbilt*, 354 U. S. 416, 418, the answer is that the Florida decree extinguished petitioner's dower rights." *Ante,* p. 85. The Court goes on to state and accept the Florida law that an *ex parte* divorce extinguishes dower rights. I do not see how a withdrawal from the due process phase of *Vanderbilt* could be clearer.

Because New York was petitioner's State of domicile at all times relevant to this case and did not purport to invest her with any rights to property beyond those she received from her husband, the second rule is not involved here. My hope is that its time will come too. I continue to believe that the views expressed in my *Vanderbilt* dissent embody a more satisfactory and workable approach to the law of "divisible divorce" (*Estin v. Estin,* 334 U. S. 541) than can be distilled from existing Court opinions.

Mr. Justice Black, with whom Mr. Justice Douglas joins, concurring.

I agree completely with the Court's judgment and opinion, and add these few words only in reply to the suggestion of my Brother Harlan that the Court here is making "a partial retreat from *Vanderbilt v. Vanderbilt,* 354 U. S. 416." I do not think that today's decision marks any "retreat" at all from the opinion or holding in *Vanderbilt,* and I do not understand the Court so to regard it. *Vanderbilt* held that a wife's right to support could not be cut off by an *ex parte* divorce. In the case before us, Mrs. Simons' Florida dower was not terminated by the *ex parte* divorce. It simply never came into existence. No one disputes that the *ex parte* divorce was effective to end the marriage, so that after it Mrs. Simons was no longer Mr. Simons' wife. Florida law, as the Court's opinion shows, grants dower only to a woman who

is the legal wife of the husband when he dies. Mrs. Simons therefore had no property rights cut off by the divorce. She simply had her marriage ended by it, and for that reason was not a "widow" within the meaning of the Florida law. Unless this Court were to make the novel declaration that Florida cannot limit dower rights to widows, I see no possible way in which the *Vanderbilt* case, which dealt with rights which a State did give to divorced wives, could be thought to apply.

MR. JUSTICE STEWART and MR. JUSTICE GOLDBERG, dissenting.

We would dismiss the writ of certiorari in this case as improvidently granted, believing that, as the Court's opinion clearly demonstrates, no federal question is presented. There exists no question under the Full Faith and Credit Clause, because Sol Simons, even after his Florida divorce, "complied with the full measure of the New York decree," *ante,* at 84.

No other federal question is even remotely suggested in the present posture of this case. Petitioner asserted in her petition for a writ of certiorari that "[t]he Courts of Florida have denied to the widow, Lucy C. Simons, her constitutional property rights to which she was entitled . . . by the mere subterfuge of an ex parte divorce case in the Courts of Florida, where the Florida Court did not have jurisdiction because of the lack of proper residence." We were advised at oral argument by petitioner's counsel, however, that petitioner no longer challenged the judgment below insofar as it embodied a holding that the 1952 Florida divorce decree was valid and terminated the marital status of the parties.

The only possible questions which remain in this case, therefore, are questions of state law which are of no proper concern to this Court.