## No. 25670

**Myra Ann Viernes v. The District Court in and for the Fourth Judicial District, County of El Paso, State of Colorado, Honorable Willaim M. Calvert, Judge**

(509 P.2d 306)

Decided April 23, 1973.

286

Cole, Hecox, Tolley, Edwards & Hero, Lawrence A. Hecox, Michael R. Bromley, Professor Homer C. Clark, for petitioner.

Don Shook, for respondent.

MR. JUSTICE ERICKSON delivered the opinion of the Court.

Pursuant to C.A.R. 21, an original proceeding was filed to prohibit the district court from proceeding further in an action for dissolution of marriage. The district court held that it had jurisdiction to proceed after the plaintiff-husband established that he was a member of the armed services who was stationed in Colorado for more than ninety days before the suit for dissolution of marriage was filed. We issued a rule to show cause and now make the rule absolute.

Our decision is premised on an interpretation of the Uniform Dissolution of Marriage Act, 1971 Perm. Supp., C.R.S. 1963, 46-1-1. The Colorado statute is patterned after the Uniform Marriage and Divorce Act. *See* Handbook of the National Conference of Commissioners on Uniform State Laws (1970) pp. 176-222. Specifically, our opinion hinges on

the meaning which should be given to the following provisions of the Act:

"46-1-6. *Dissolution of marriage — legal separation.* (1)(a) The district court shall enter a decree of dissolution of marriage when:

"(b) The court finds that one of the parties has been a resident of this state, or is a member of the armed services who has been stationed in this state, for ninety days next preceding the commencement of the proceeding, but in no event shall a decree enter prior to ninety days after service of process;

. . . .

"(d) To the extent it has jurisdiction to do so, the court has considered, approved, or made provision for child custody, the support of any child of the marriage who is entitled to support, the maintenance of either spouse, and the disposition of property."

The trial court has interpreted the statute in such a way as to grant every person in the armed services who has been stationed in Colorado for ninety days the right to obtain a divorce in Colorado. We do not interpret the statute so broadly. In our view, the mere presence of a person in the armed services in Colorado provides an insufficient basis for Colorado courts to assume jurisdiction for the purpose of granting a divorce. A summary of the pertinent facts brings the jurisdictional issue into sharp focus.

The husband, who filed the divorce petition, was a member of the armed services and was stationed in Colorado for more than ninety days. He was not, and is not, a domiciliary of Colorado, and his sole contact with Colorado rests upon his assignment to a military post in Colorado. His wife, who is the defendant, was never in Colorado. She was served with a summons and a petition for dissolution of marriage at her home in Tennessee. The defendant-wife, through her counsel, has appeared specially to contest the jurisdiction and for no other purpose. The children who were born as the issue of the marriage live in Tennessee with the defendant-wife. It is admitted that the defendant-wife was

and is domiciled in Tennessee. Tennessee is also admittedly the place where the parties were married and maintained their home. While married, the plaintiff-husband was assigned to duty in the armed services in various foreign countries and in several different states. He is domiciled in Hawaii.

Thus, the plaintiff-husband contends that a member of the armed services who is stationed in Colorado for more than ninety days may cause a Colorado court to hear his claim for divorce. He claims that it is irrelevant that he is a Hawaiian domiciliary and that his wife is domiciled in Tennessee. If we were to follow the plaintiff-husband's argument, the fact that neither of the parties to the marriage was a Colorado domiciliary in this case would be no barrier to the Colorado court's power to enter a decree of divorce. It is clear to us that Colorado has no significant contact with the marriage and does not have jurisdiction to grant a divorce.

The history of divorce legislation and litigation shows that divorce has never been considered to be a simple, transitory personal action. Traditionally, every state has an interest in, and exercises jurisdiction over, marital status to promote the general welfare of its people. The state has an interest both in the formation and the dissolution of a marriage. Marriage is the foundation of the family and of society. As a result, every state as a sovereign has a rightful and legitimate concern in the marital status of those persons who are domiciled within the state. *Andrews v. Andrews,* 188 U.S. 14, 23 S.Ct. 237, 47 L.Ed. 366 (1903). *See Estin v. Estin,* 334 U.S. 541, 68 S.Ct. 1213, 92 L.Ed. 1561 (1948). *See generally, R. Leflar, American Conflicts Law* § 223 (1968).

Domicile has been the keystone for jurisdiction to determine the marital status. *Williams v. North Carolina* (I), 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279 (1942); *Andrews v. Andrews, supra. Williams v. North Carolina* (I), *supra,* is authority for the rule that a divorce decree must be granted full faith and credit in every sister state if one of the parties to the divorce was domiciled in the state that granted the

decree. Domicile has been held to be a constitutional prerequisite for jurisdiction. *Alton v. Alton,* 207 F.2d 667 (3d Cir.), *dismissed as moot,* 347 U.S. 610, 74 S.Ct. 736, 98 L.Ed. 987 (1954). *Accord, Jennings v. Jennings,* 251 Ala. 73, 36 So.2d 236 (1948). *But see, Granville-Smith v. Granville-Smith,* 349 U.S. 1, 75 S.Ct. 553, 99 L.Ed. 773 (1955). Moreover, domicile has been held to be so vital to divorce jurisdiction that a sister state may refuse to accord full faith and credit to a divorce decree if it finds that the decree was granted to a party who did not have the requisite jurisdictional ties of domicile. *Rice v. Rice,* 336 U.S. 674, 69 S.Ct. 751, 93 L.Ed. 957 (1949); *Williams v. North Carolina* (II), 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945); *Koscove v. Koscove,* 113 Colo. 317, 156 P.2d 696 (1945).

A traditional analysis could perhaps end here and simply declare that without domicile of at least one of the parties, no jurisdiction to dissolve a marriage can exist. Jurisdictional theory, however, is not frozen, and the law has developed along with the needs of society. In place of mechanistic rules to determine jurisdiction, an analysis of the interests and the contacts involved in a controversy more effectively and fairly serves the need of society.

█ If a state has sufficient contacts with the subject matter and the parties, it may properly act. *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Unless suitable contacts do exist, the state may not constitutionally act. *Hanson v. Denkla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). To pursue analysis of the interests and contacts, we must focus precisely on the issue in this case.

█ The very nature of marriage is such that not only is status involved, but also a number of personal rights, duties, and obligations. Welfare of the children and support obligations provide substantial questions in many divorce cases. Jurisdiction to grant a divorce does not automatically include the right to resolve all financial issues between the parties to the marriage. *Vanderbilt v. Vanderbilt,* 354 U.S. 416, 77 S.Ct. 1360, 1 L.Ed.2d 1456 (1957); *Estin v. Estin,*

*supra. Cf., Simons v. Miami Beach First National Bank,* 381 U.S. 81, 85 S.Ct. 1315, 14 L.Ed.2d 232 (1965) [dower rights distinguished and allowed to be cut off by ex parte divorce with constructive service]. In the *Vanderbilt* case, the Supreme Court held that although Nevada did have jurisdiction to grant a divorce, Nevada could not modify the rights of the wife to financial support from the husband under New York law when she did not submit to the jurisdiction of Nevada.

The Commentary which was prepared for the Uniform Marriage and Divorce Act also recognizes that not all issues may be before the court in some instances:

"Subsection (a) lists the three findings that a court must make before it has jurisdiction to enter a decree of dissolution of marriage: first, it must find that one party to the marriage has established an appropriate connection with the state; second, it must find that the marriage is irretrievably broken; and finally, to the extent it has jurisdiction to do so, it must have considered and passed on the issues of custody, support, maintenance and property disposition. If the court lacks jurisdiction to act upon any of the matters listed in subsection (a)(3), without acting upon that matter, it may enter a decree of dissolution of marriage. Thus, if the court is acting upon the petition of one spouse only and the other spouse is not subject to the personal jurisdiction of the court, the court lacks jurisdiction to decide issues relating to maintenance, *Vanderbilt v. Vanderbilt,* 354 U.S. 416 (1957); *Estin v. Estin,* 334 U.S. 541 (1948), or the distribution of property not before the court, see *Fall v. Eastin,* 215 U.S. 1 (1909); and may not have jurisdiction, acting alone, to decide issues relating to support, consult the uniform Reciprocal Enforcement of Support Act, or child custody. *May v. Anderson,* 345 U.S. 528 (1953); consult the Uniform Child Custody Jurisdiction Act. In such a case, the court has jurisdiction only to dissolve the marriage and it may enter its decree of dissolution after making the findings set forth in subsection (a)(1) and (2)."

Handbook of the National Conference of Commissioners on

Uniform State Laws (1970) p. 199.

In this case, the husband seeks an ex parte divorce inasmuch as the wife has not appeared generally. *See Sherrer v. Sherrer,* 334 U.S. 343, 68 S.Ct. 1087, 92 L.Ed. 1429 (1948); *Coe v. Coe,* 334 U.S. 378, 68 S.Ct. 1094, 92 L.Ed. 1451 (1948). No issues are before the court in this case other than dissolution of the status of marriage.

In approaching the problem, it is necessary to recognize that competing interests of several states are involved. *Alaska Packers Ass'n. v. Industrial Accident Comm'n.,* 294 U.S. 532, 55 S.Ct. 518, 79 L.Ed. 1044 (1935). In *Williams v. North Carolina* (I), *supra,* the Court said: "Each state as a sovereign has a rightful and legitimate concern in the marital status of persons domiciled within its borders." Both of the states with ties of domicile have substantial interests in the marital status of their citizens. Tennessee, the state of domicile of the wife and children, has an especially vital interest.

Other courts have been faced with the same problem which confronts us, but in four of the cases, the necessary basis for jurisdiction under the statute and the facts which were before the court amounted to far more substantial contacts with the forum state than our statute requires or the facts in this case provide. In the four cases which are brought to our attention, jurisdiction was predicated upon residence in the state for a period of one year as a member of the armed services. In *Craig v. Craig,* 143 Kan. 624, 56 P.2d 464 (1936), a case which predated *Williams v. North Carolina* (I), *supra,* the Kansas court held that jurisdiction did exist when both the husband and wife were residents of Kansas for more than one year. In *Lauterbach v. Lauterbach,* 392 P.2d 24 (Alaska, 1964), departing from traditional concepts of domicile, the court found that a substantial state interest in the affairs of service families, which constituted a sizeable percentage of Alaska's population, when joined with one-year residence, was sufficient to grant the Alaska court power to divorce the parties. In *Wood v. Wood,* 159 Tex. 350, 320 S.W.2d 807 (1959), the Texas court exercised jurisdiction to grant a divorce after, in effect, equating one year of residence

by a serviceman to domicile. The New Mexico court found jurisdiction to exist when the parties who were seeking the divorce owned a home in New Mexico and had lived there for more than a year. *Wallace v. Wallace,* 63 N.M. 414, 320 P.2d 1020 (1958).

In *Williams v. North Carolina* (I), *supra,* the Nevada statute which formed the basis for the Nevada court assuming jurisdiction to grant a divorce, provided for residence, but the word "residence" was deemed to mean "domicile." *Williams v. North Carolina* (II), *supra; R. Leflar, American Conflicts Law* § 225 (1968).

 Other state supreme courts have dealt with statutes similar to ours and have held that the statute actually requires domicile, even if the statute does not explicitly so state. In *Martin v. Martin,* 253 N.C. 704, 118 S.E.2d 29 (1961), the North Carolina supreme court had to interpret a statute which was substantially equivalent to our statute, except that it specified six months' stationing within the state. The court held that at least one of the parties must be domiciled in North Carolina. The statutory language was found to be an expression of a policy that a serviceman stationed in North Carolina could, in fact, be domiciled in North Carolina, provided he had the requisite intent. The Oregon supreme court has similarly required domicile under a statute which specifies that the plaintiff must have been an inhabitant of the state for one year. *Volmer v. Volmer,* 231 Ore. 57, 371 P.2d 70 (1962). The Georgia court also has firmly required more than mere presence and has refused to allow divorce without a showing of the elements of common-law domicile by servicemen who have been stationed on military posts within Georgia for one year. *Lorance v. Lorance,* 216 Ga. 754, 119 S.Ed.2d 342 (1961). The Commentary on the Uniform Marriage and Divorce Act supports an approach which treats civilians and persons in the armed forces evenhandedly:

"The 90 day period of subsection (a)(1) is intended to be continuous and to apply both to residents and to members of the armed services. The period may be counted prior to the

commencement of the proceeding or prior to the entry of the decree. The purpose of allowing this alternative measure is to permit one newly arrived in the state to commence a proceeding immediately, thus giving the court jurisdiction to enter temporary orders that may be necessary to protect the rights of the parties. Persons who have satisfied the 90 day period prior to the commencement of the proceeding are not required to remain in the state until the decree is entered. A showing that either party satisfies the 90 day requirement is sufficient under the section; thus, a petitioner may rely on the respondent's having satisfied the 90 day period."

Handbook of the National Conference of Commissioners on Uniform State Laws (1970), p. 199. Under our statutes, "residence" for the purposes of divorce jurisdiction has always previously required and continues to require domicile. *Mulhollen v. Mulhollen,* 145 Colo. 479, 358 P.2d 887 (1961). *See Watson v. Watson,* 135 Colo. 296, 310 P.2d 554 (1957). The word "residence" is generally understood to mean more than mere presence and indicates some permanency of abode. *See Country Mutual Insurance Co. v. Watson,* 1 Ill.App.3d 667, 274 N.Ed.2d 136 (1971).

We hold that domicile of one of the parties to a divorce action is required in Colorado. We view our statute as providing that a serviceman may establish a Colorado domicile to support jurisdiction for a Colorado court to grant a decree of dissolution of marriage after he has been stationed in Colorado for ninety days.

The bald fact that the plaintiff-husband was stationed in Colorado for ninety days did not create such a significant contact with Colorado as to permit Colorado courts to dissolve the marriage on the ex parte application of the plaintiff-husband. We see nothing in the record that establishes contact with Colorado, apart from assignment of the plaintiff-husband to a military post in Colorado. Therefore, the court below does not have jurisdiction to hear and determine the divorce action between the parties.

The rule is made absolute.