24CA0355 Marriage of Bellinsky 07-17-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0355
Gilpin County District Court No. 15DR7
Honorable Lindsay VanGilder, Judge

In re the Marriage of,

Rachel Bellinsky, n/k/a Rachel Galan,

Appellee,

and

Rabbi Jacob Bellinsky,

Appellant.

ORDER AFFIRMED

Division VI
Opinion by JUDGE TOW
Yun and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 17, 2025

No Appearance for Appellee

Rabbi Jacob Bellinsky, Pro Se

¶ 1    In this post-decree proceeding, involving Rachel Bellinsky, n/k/a Rachel Galan (mother), and Rabbi Jacob Bellinsky (father), father appeals the district court's order adopting the magistrate's decision granting mother's motion to relocate with the minor children and her motion to modify decision-making. We affirm.

## I.    Background

¶ 2    The parties' marriage ended in 2016. Their separation agreement, which included a parenting plan, was incorporated into that decree, and provided for shared parental responsibilities for the parties' six unemancipated children.[1]

¶ 3    In 2021, after an evidentiary hearing, the district court imposed supervised parenting time requirements for father. A division of this court concluded that the district court did not make sufficient findings under section 14-10-129(1)(b)(I), C.R.S. 2024, to justify the restrictions; the division thus reversed the parenting time orders and remanded the case for reconsideration of father's parenting time. *In re Marriage of Bellinsky*, (Colo. App. No. 21CA0634, Aug. 4, 2022) (not published pursuant to C.A.R. 35(e)).

---

[1] Two of the parties' eight children had turned eighteen before permanent orders.

On remand, after a hearing at which father did not appear, the district court made findings for each of the four remaining minor children[2] affirming that their physical or emotional health would be impaired absent a restriction on father's parenting time and granted father supervised parenting time up to two times per month. Father did not appeal this ruling.

¶ 4     Several months later, mother filed a motion to relocate the four minor children to Florida and a motion to modify decision-making to grant mother sole decision-making responsibility over the minor children.  Mother filed a proposed amended parenting plan in conjunction with the motions.

¶ 5     Approximately a month and a half later, in response, father filed a notice of removal of the state court action to the United States District Court for the District of Colorado.  Two days after father filed the notice, the magistrate presiding over this case issued a post-decree case management order (CMO) to set a hearing on the motions.  The CMO acknowledged the notice of removal but

---

[2] The parties' third and fourth oldest children emancipated between the initial order restricting parenting time and the post-remand order.

2

noted that "the court recognizes no authority referenced . . . that removes this Court's jurisdiction and, thus, this Court maintained initial and continuing jurisdiction."  Later that year, the court stayed the proceedings as it waited for a final order from the federal court on father's removal request.  After the federal court remanded the issue to the state court, a district court magistrate conducted an evidentiary hearing on mother's motions, at which father again did not participate.[3]  Due to father's nonparticipation, the court noted that it was "proceed[ing] in default."

¶ 6    Following the hearing, the magistrate made oral findings regarding the best interests of the children, the applicable relocation factors, and the interests of the parents.  In a written order, the magistrate granted mother's motions and adopted her proposed parenting plan with an amendment that the plan would only apply to the three remaining minor children.[4]  Father filed a

---

[3] The record reflects that someone appeared at the virtual hearing using a telephone number that mother said "look[ed] like [father's] number."  However, when the court asked that individual to identify themselves, no one responded.

[4] The parties' fifth child turned eighteen during the proceedings in the district court.  We further note that their sixth child turned eighteen while this appeal was pending.

petition for review with the district court, which adopted and affirmed the magistrate's order granting mother's motions. Simultaneously, father filed an appeal with this court, and his appeal was allowed to proceed after the district court resolved his petition for review.

## II.   The Scope of This Appeal

¶ 7    At the outset, we note what is — and what is not — properly before us.  Father appeals a multitude of issues including his belief that (1) all post-decree orders in this proceeding from August 2019 to the present are void due to fraud upon the court;[5] (2) the state court acted without jurisdiction when it issued the CMO after father filed for removal of the action to federal court; (3) the motions hearing was jurisdictionally flawed and created jurisdictional and due process violations against father; (4) the magistrate's

---

[5] Notably, the crux of father's argument highlighting this alleged "fraud upon the court," relies on a single motion to modify parenting time filed by mother in 2019, which father contends misrepresented the scope of her requested modification.  This, by itself, does not constitute fraud upon the court.  *In re Marriage of Gance*, 36 P.3d 114, 118 (Colo. App. 2001) ("*Fraud on the court must involve more than injury to a single litigant; it is limited to fraud that 'seriously' affects the integrity of the normal process of adjudication.") (citation omitted).

4

involvement in the case after father named him as a defendant in a federal lawsuit created structural error;[6] and (5) the trial court's failure to address the jurisdictional challenges rendered the proceedings fundamentally unfair.

¶ 8    The only order on appeal is the district court's order adopting the magistrate's order granting mother's motions.  Furthermore, because the question of whether the state court acted without jurisdiction when issuing the CMO directly impacts the order on appeal, we will address it accordingly.  Finally, father's claims regarding the jurisdictional defects of the motions hearing are properly before us and we will address them in turn.  Any earlier

---

[6] Father named the magistrate as a defendant in a federal lawsuit after the judicial officer chose to "proceed in this known void case without 'competent jurisdiction and authority,'" and argues that this action required the magistrate to recuse himself from the proceedings.  However, father offers no evidence to support his claim that the magistrate's impartiality was in question.  And "a motion which merely alleges opinions or conclusions, unsubstantiated by facts supporting a reasonable inference of actual or apparent bias or prejudice, is not legally sufficient to require disqualification." *Prefer v. PharmNetRx, LLC,* 18 P.3d 844, 850 (Colo. App. 2000).

unappealed orders father seeks to challenge are not properly before us.[7]

## A.  The CMO

¶ 9     Father argues the magistrate acted without jurisdiction when he issued the CMO after father filed a notice of removal of the action to federal court.  We disagree.

### 1.  Standard of Review

¶ 10     Civil actions may be removed to federal district court if the action involves a federal question.  *See* 28 U.S.C. § 1331.  A federal question is presented when a civil action arises under the Constitution, laws, or treaties of the United States.  *Id.*  "An action 'arises under' federal law when the vindication of a right under state law necessarily turns on the construction of a federal law." *Telluride Co. v. Varley*, 934 P.2d 888, 889 (Colo. App. 1997).

---

[7] Father filed a "Notice of Continuing Objection" to this court's panel assignment alleging Judge Tow and Judge Sullivan "had prior involvement in related appellate proceedings that demonstrated bias against [father]."  Because father has stated no legal basis for the disqualification of these judicial officers, his objection is overruled.  *See Bocian v. Owners Ins. Co.*, 2020 COA 98, ¶ 23 ("[I]t is well established that adverse legal rulings, standing alone, do not constitute grounds for claiming prejudice or bias.").

¶ 11     "[A] Colorado court is not deprived of jurisdiction where a party's notice of removal to a federal court indicates, on its face and as a matter of law, that the party's attempt to remove the case was without the slightest color of right or merit." *McDonald v. Zions First Nat'l Bank, N.A.*, 2015 COA 29, ¶ 26. Traditionally, the state has an interest in, and exercises jurisdiction over, domestic relations cases. *See Viernes v. Dist. Ct.*, 509 P.2d 306, 308 (Colo. 1973).

## 2. Analysis

¶ 12     Father contends that "upon filing a notice of removal, 28 U.S.C. § 1446(d) automatically divests the state court of all jurisdiction and authority to proceed." Father misconstrues the nuances of removal proceedings. As noted, removal is proper when a federal question is presented. *See* § 1331. But filing a notice of removal without meeting that requirement does not automatically divest the state court of jurisdiction. *See* § 1446.

¶ 13     In his notice of removal, father argued that the action presented a federal question based on the state court's failure "to refute [f]ather's claims of numerous frauds upon and by the court, numerous deprivations and violations of rights, and numerous state

and federal crimes." None of father's claims explains how these alleged fraudulent actions and purported deprivations of rights arise under federal law. Instead, father simply cites the general requirements for removal proceedings and the federal question requirement without addressing how they are applicable in this case.

¶ 14 Moreover, father's attempt to remove the matter was not timely. Removal must occur, if at all, within thirty days of receipt of the complaint. § 1446(b). Father filed his notice of removal on July 17, 2023. Even if we consider the relevant date to be the date mother filed her motions — as opposed to the date the initial petition was filed more than eight years earlier — father did not attempt to remove the case until forty-six days after mother filed the motions at issue. The state court did not lose jurisdiction because father's attempt to remove the case was facially meritless, *see McDonald,* ¶ 26, and the magistrate was entitled to issue the CMO.[8]

---

[8] In any event, father does not explain why the court's purely procedural order somehow taints the substantive order that was not entered until the federal court had already rejected father's efforts to remove the case.

## B. The Evidentiary Hearing

¶ 15 Father claims the motions hearing was jurisdictionally flawed and violated father's due process rights. We note initially that the bulk of father's contentions appear to address the court's subject matter jurisdiction. But his challenge to the court's having proceeded "in default" at the evidentiary hearing on mother's motions might be an attack on personal jurisdiction. Liberally construing his pro se pleading as such, we address both types of jurisdiction.

### 1. Standard of Review and Applicable Law

¶ 16 If the facts on which jurisdiction is based are not disputed, we review de novo whether the trial court had jurisdiction. *Tulips Invs., LLC v. State ex rel. Suthers*, 2015 CO 1, ¶ 11. If those underlying facts are disputed, we review the court's resolution of the factual disputes for clear error. *Id.* Under a clear error review, we will disturb the court's findings only if there is no record support for them. *Levine v. Katz*, 192 P.3d 1008, 1012 (Colo. App. 2006).

## 2. Analysis

### a. Personal Jurisdiction

¶ 17     Personal jurisdiction means the court's legal authority over a party's person. *Gilford v. People*, 2 P.3d 120, 126 (Colo. 2000). When a party enters a general appearance and seeks relief from the court in a form that acknowledges the court's authority, that party has consented to personal jurisdiction. *In re Marriage of Haddad,* 93 P.3d 617, 650 (Colo. App. 2004). Thus, when father filed the petition for dissolution as a co-petitioner in 2015, the court acquired personal jurisdiction over him.

¶ 18     To the extent father contends that personal jurisdiction had to be separately acquired for the post-decree motion, he cites no authority for such a proposition. Nor are we aware of any. To the contrary, personal jurisdiction remains throughout a domestic relations case; it is not reassessed for each post-decree motion. *See Brown v. Brown,* 516 P.2d 1129, 1131 (Colo. 1973) ("Once having obtained jurisdiction over [the father in a dissolution of marriage action], the district court's power over his person continues until all matters arising out of that litigation are resolved."). Consequently,

the court had personal jurisdiction over father when it conducted the evidentiary hearing on mother's motions.

### b. Subject Matter Jurisdiction

¶ 19 "A court has subject matter jurisdiction where it has been empowered to entertain the type of case before it by the sovereign from which the court derives its authority." *In re Marriage of Roth,* 2017 COA 45, ¶ 14 (quoting *Wood v. People,* 255 P.3d 1136, 1140 (Colo. 2011)). Unlike personal jurisdiction, a party is entitled to challenge a district court's subject matter jurisdiction at any time, including for the first time on appeal. *Gestner v. Gestner,* 2024 COA 55, ¶ 20 n.4.

¶ 20 Father raises several challenges to the court's jurisdiction to conduct the motions hearing. He argues that (1) mother committed a fraud on the court vitiating jurisdiction; (2) the removal of the proceeding to federal court eliminated the district court's jurisdiction; (3) he did not consent to the magistrate presiding over the proceedings; and (4) the court did not address father's jurisdictional challenges. Each contention is without merit.

¶ 21 Father contests the court's jurisdiction over the subject matter of the proceeding based on an alleged "fraud upon the court"

committed by mother and several other nonparties. But, as noted, fraud upon the court "is limited to fraud that 'seriously' affects the integrity of the normal process of adjudication." *In re Marriage of Gance*, 36 P.3d 114, 118 (Colo. App. 2001) (citation omitted). Father has failed to prove that any such fraud occurred. Instead, father's allegations largely rely on his continued, conclusory, and unsubstantiated assertion that the judicial system as a whole is biased against him. In short, the district court had, and continues to have, jurisdiction over the parties and their post-decree disputes involving their children.

¶ 22    We have already addressed the effect of father's unsuccessful attempt to remove the matter to federal court. *Supra*, Part II.A.2. For the same reason this maneuver had no effect on the court's authority to enter the CMO, it did not divest the court of jurisdiction to resolve mother's motions — particularly in light of the fact that the federal court had already rejected the removal attempt at the time of the hearing.

¶ 23    Next, father's consent to the magistrate presiding over the proceedings was unnecessary. Magistrates have the authority to preside over post-decree motions to modify parental responsibilities

without the consent of the parties. C.R.M. 6(b)(1)(B). Moreover, as the district court noted when reviewing the magistrate's order, "[i]f Father had appeared and objected, the court then could have appropriately dealt with that objection."

¶ 24 And finally, contrary to father's argument, the court did not merely *acknowledge* father's jurisdictional challenges during the motions hearing but, rather, *resolved* them when it found that father's notice "contained no legal authority" and that the court "could not find authority for why [it] has no jurisdiction over this case . . . especially after the attempted removal to Federal Court was brought back to the State of Colorado." The court addressed this issue again after a brief recess when it ultimately found that it did "have personal and subject matter jurisdiction with respect to the parties and contents here today."

¶ 25 In sum, we cannot find any legal authority supporting father's allegations that the district court lacked jurisdiction to conduct the motions hearing.

### C. Merits of the Motions

¶ 26 Turning to the merits of the court's ruling, we note that father does not appear to argue that the magistrate applied an incorrect

13

legal standard or that his ultimate analysis granting mother's motions was legally flawed. Nevertheless, because the scope of his argument is not entirely clear, we will briefly address those issues here in an effort to address all of father's challenges.

### 1. Standard of Review

¶ 27 "Our review of a district court's order adopting a magistrate's decision is effectively a second layer of appellate review." *In re Marriage of Thorburn*, 2022 COA 80, ¶ 25. Like the district court, we will accept the magistrate's factual findings unless they are clearly erroneous, meaning they have no support in the record. *In re Marriage of Young*, 2021 COA 96, ¶ 8. But we review de novo questions of law, including whether the magistrate properly applied the correct legal standard. *In re Marriage of Sheehan*, 2022 COA 29, ¶ 22.

¶ 28 In addressing a relocation request, the court must consider the best interests factors in section 14-10-124(1.5)(a), C.R.S. 2024, the relocation factors in section 14-10-129(2)(c), and the parents' interests relative to the requested relocation. *See In re Marriage of Ciesluk*, 113 P.3d 135, 142 (Colo. 2005) (holding the court must balance the right to travel, the right to parent, and the best

14

interests of the child in a relocation request).  Both parents equally share the burden of demonstrating how a child's best interests will be served by relocation.  *Id.* at 147.  And "a court may not presume either that a child is better off or disadvantaged by relocating with the majority time parent."  *Id.*

¶ 29     As relevant here, a district court may modify the allocation of decision-making responsibility if there has been a modification in parenting time pursuant to section 14-10-129 that warrants reallocating decision-making responsibilities.  § 14-10-131(2)(b.5), C.R.S. 2024; *see also In re Marriage of Graham,* 121 P.3d 279, 281 (Colo. App. 2005), *overruled on other grounds by Ciesluk,* 113 P.3d at 146.  The court must find, on the basis of facts that have arisen since the prior order or that were unknown to the court at the time of the prior order, that (1) a change has occurred in the circumstances of the child or the party to whom decision-making responsibility was allocated, and (2) the modification is necessary to serve the child's best interests.  § 14-10-131(2).

## 2.    Analysis

¶ 30     When approving mother's request to relocate with the minor children, the court made specific findings on each of the relocation

15

factors in section 14-10-129(2)(c) and then made additional findings under the best interests factors in section 14-10-124(1.5)(a). The court also made findings balancing the interests of the parents and children. *See Ciesluk*, 113 P.3d at 142. After weighing the various factors, the court found "there [was] a preponderance of evidence that supports the relocation of [mother and the minor children]."

¶ 31 As for mother's request to modify decision-making, the court incorporated its previous findings for the best interests of the children. The court also made specific findings under section 14-10-131(2)(b.5), noting that the restriction imposed on father's parenting time warranted a modification of the allocation of decision-making responsibilities.

¶ 32 The magistrate applied the correct legal standard, and we discern no clear error in its factual findings.

### III. Disposition

¶ 33 The order is affirmed.

JUDGE YUN and JUDGE SULLIVAN concur.