ANNETTE LAVI, Respondent, v HOUSHANG LAVI, Appellant.

Second Department, October 1, 1984

APPEARANCES OF COUNSEL

*Henry Stone* (*Jeffrey Schall* of counsel), for appellant.
*Joel R. Brandes, P. C.,* for respondent.

**OPINION OF THE COURT**

NIEHOFF, J.

In this case Special Term held that, since the advent of the Equitable Distribution Law, the courts of our State are empowered to grant interim maintenance, support or other ancillary relief in an action which seeks, *inter alia,* a declaration of nullity of a foreign judgment of divorce which was entered prior to July 19, 1980, the effective date of the Equitable Distribution Law (Domestic Relations Law, § 236, part B). We agree.

The facts in this case are most unusual. On December 20, 1968, the parties were married in Queens County, New York. Less than a year later, on July 24, 1969, both parties traveled to Juarez, Mexico, and appeared before a Judge of the First Civil Court of the Bravos District where the

plaintiff wife's petition for divorce was granted declaring, *inter alia*, "the dissolution of the marriage that took place in [Kew Gardens] New York on December 20, 1968 between MRS. ANNETTE PINTOURI LAVI and HOUSHANG LAVI [leaving] both parties the ability to remarry at their convenience". While it is true that it was the plaintiff who initiated the Mexican divorce proceeding, she claims that she was duped or defrauded into doing so by the defendant. According to her complaint, in or about the beginning of 1969 defendant told plaintiff that his feelings for her had diminished because she was his and that if she were no longer his, and they were no longer married, his feelings of love and affection for her would return. Plaintiff claims further that defendant told her that if she divorced him they would return to New York and continue to live together and that following the return of his feelings of love and affection for her which would result when she was no longer his, he would marry her. In fact, following the divorce the parties returned to New York and continued to reside together as husband and wife for nearly 10 years until their separation sometime in May of 1979. During the aforesaid period, to wit, on March 8, 1971, a daughter was born to the parties.

On May 16, 1983, the plaintiff wife initiated the present action by the service of a summons upon the defendant. By order to show cause dated June 3, 1983, she brought on an application for various *pendente lite* relief, including requests for support and maintenance for herself and the parties' infant daughter. On or about June 22, 1983, plaintiff's verified complaint was served upon defendant's attorney. It contains 10 causes of action. The first four causes of action seek a judgment of divorce on various grounds and in the fifth cause of action the plaintiff seeks moneys to reimburse her for expenses previously incurred by her. The sixth cause of action is denominated as an "alternative cause of action to declare the nullity of a Mexican judgment of divorce" and in her seventh cause of action plaintiff seeks "to declare the validity of the parties' marriage". The remaining causes of action concern themselves with purely financial matters.

Before Special Term, defendant argued that the court could not grant any *pendente lite* relief to the plaintiff

because she was his ex-wife. More specifically, defendant claimed that "the obligation of a husband to support his wife is based upon the existence of a valid marriage" which was nonexistent herein by virtue of the Mexican divorce decree. Special Term correctly rejected the defendant's argument, granted various aspects of the plaintiff's motion, and referred other aspects of her application to the trial court for determination.

On this appeal, the defendant contends that (1) in the absence of a marital relationship the court was without jurisdiction to grant the motion and that the Mexican divorce decree constituted a complete bar to the plaintiff's motion for maintenance, support and ancillary relief; (2) part B of section 236 of the Domestic Relations Law does not invalidate prior rulings to the effect that jurisdiction is lacking when the parties before a court are no longer married; and (3) if jurisdiction is found to exist in the case at bar, then, because the Mexican divorce was entered prior to the effective date of the Equitable Distribution Law, part A of section 236 is the section applicable to this motion and *pendente lite* relief is not available to the plaintiff under part A of section 236. We find these contentions to be without merit.

Prior to the enactment of the Equitable Distribution Law, it was generally acknowledged that New York's courts obtained their power to award maintenance or alimony through statutory authority and that they were without jurisdiction to award matrimonial relief where there was an existing, outstanding divorce judgment between the parties (see *Vanderbilt v Vanderbilt,* 1 NY2d 342, 350, affd 354 US 416; *Weintraub v Weintraub,* 302 NY 104; *Querze v Querze,* 290 NY 13; *Johnson v Johnson,* 206 NY 561; *Merrick v Merrick,* 56 AD2d 827; *Pierot v Pierot,* 49 AD2d 838; *Trazzi v Trazzi,* 49 AD2d 954; *Matter of Aletha Butts "MM" v Donald Melvin "MM",* 39 AD2d 995; *Matter of Carter v Carter,* 19 AD2d 513). In short, the rule in New York was that because maintenance or alimony does not spring from the common law but is a creature of statute, such could be awarded *only* in those proceedings or actions specified in former section 236 of the Domestic Relations Law as matrimonial actions, namely, divorce

actions, separation actions or actions to annul a marriage or declare the nullity of a void marriage. If an action was different in form from those enumerated in said statute, our courts held themselves to be without the power to award alimony and, as noted above, where there was an existing outstanding divorce judgment between the parties, the court lacked jurisdiction to award matrimonial relief.

However, when the Legislature enacted the Equitable Distribution Law, it expanded the types of actions in which maintenance could be awarded. The result, section 236 (part B, subd 2) of the Domestic Relations Law, contains language more closely paralleling the CPLR definition of a matrimonial action which includes actions for "a declaration of the validity or nullity of a foreign judgment of divorce" (CPLR 105, subd [p]). Thus, section 236 (part B, subd 2) of the Domestic Relations Law reads: "Matrimonial actions. Except as provided in subdivision five of this part, the provisions of this part shall be applicable to actions for an annulment or dissolution of a marriage, for a divorce, for a separation, for a declaration of the nullity of a void marriage, *for a declaration of the validity or nullity of a foreign judgment of divorce,* for a declaration of the validity or nullity of a marriage, and to proceedings to obtain maintenance or a distribution of marital property following a foreign judgment of divorce, commenced on and after the effective date of this part. Any application which seeks a modification of a judgment, order or decree made in an action commenced prior to the effective date of this part shall be heard and determined in accordance with the provisions of part A of this section" (emphasis added).

Section 236 (part B, subd 6) of the Domestic Relations Law provides, in pertinent part, as follows: "[I]n any matrimonial action the court may order temporary maintenance * * * to meet the reasonable needs of a party to the matrimonial action in such amount as justice requires, having regard for the circumstances of the case and of the respective parties".

And, section 236 (part B, subd 7) of the Domestic Relations Law reads, in pertinent part: "In any matrimonial

action * * * the court as provided in section two hundred forty of this chapter may order either or both parents to pay temporary child support".

In sum, under part B of section 236 of the Domestic Relations Law, the term "matrimonial action" includes an action for a declaration of the validity or nullity of a foreign judgment of divorce, and, in any matrimonial action governed by part B, the court is empowered to award temporary maintenance and child support. Without question, the inclusion of the words "for a declaration of the validity or nullity of a foreign judgment of divorce" in the statute was no accident. Under the prior law, and as restated in part A of section 236 of the present Domestic Relations Law, the Legislature expressly limited the grant of alimony to three types of matrimonial actions although other, nonspecified actions or proceedings, such as the one under consideration here, were recognized at common law. The Legislature was of the view, for reasons which it deemed proper, that our courts were not to be endowed with the power to grant alimony in those nonspecified types of actions or proceedings.

With the arrival of the Equitable Distribution Law, that has all changed and the proscription against granting temporary maintenance in a case such as this has been eliminated. Manifestly, the inclusion of the additional actions or proceedings relating to foreign judgments of divorce was intended by the Legislature to clothe our courts with the authority to award maintenance and to make distributive awards in such actions if merited by the facts of the particular case. That being so, it can no longer be said that the existence of a foreign divorce decree, in and of itself, prevents our courts from ordering maintenance. On the contrary, the court's power to exercise its discretion and award maintenance has been expanded to cases where the existence of a valid marriage is in question and that power is not automatically snuffed out upon the production of a foreign divorce decree by the party resisting such an award. Consequently, we reject the defendant's claim that the parties' 1969 Mexican divorce constitutes a complete bar to the plaintiff's motion herein and hold that our courts do have the jurisdiction to entertain requests for maintenance under section 236 (part B, subd 2) of the Domestic

Relations Law in the face of a foreign divorce decree when a cause of action seeking a declaration of the nullity of the decree is before the court.

As noted above, defendant argues, alternatively, that if jurisdiction is found to exist, then said jurisdiction exists only under part A of section 236 because the Mexican divorce decree predated the effective date of the Equitable Distribution Law. This argument is, in turn, premised upon two different segments of section 236 (part B, subd 2) of the Domestic Relations Law. Initially, defendant claims that the last sentence of that statute is dispositive of the issue. That sentence reads as follows: "Any application which seeks a modification of a judgment, order or decree made in an action commenced prior to the effective date of this part shall be heard and determined in accordance with the provisions of part A of this section".

Special Term correctly found defendant's reliance on the above-quoted sentence to be misplaced. In her complaint, plaintiff seeks a declaration as to the validity of the parties' marriage and a further declaration that the Mexican divorce judgment is invalid. Such relief can hardly be equated with an application for modification of the foreign judgment. Consequently, the above provision is of no avail to the defendant.

Finally, defendant argues that the words at the end of the first sentence of subdivision 2, "commenced on and after the effective date of this part", evince a legislative intent to have part B of section 236 of the Domestic Relations Law apply only to situations where there have been no pre-equitable distribution proceedings of any kind. In other words, if the parties have had any court involvement prior to the effective date of part B of section 236 of the Domestic Relations Law, the parties' dispute is to be determined for all time in accordance with the provisions of part A of section 236 of the Domestic Relations Law, irrespective of the precise nature of the dispute being litigated.

A contention similar to that urged by the defendant was rejected by the Appellate Division, First Department, in the case of *Felt v Felt* (93 AD2d 396, affd for reasons stated in opn at App Div, 62 NY2d 691). In that case, as in the

instant case, a foreign divorce decree had been entered a number of years before the controversy entered the New York courts. There, the defendant husband had obtained a divorce decree from his wife in the Dominican Republic in 1973 and he had thereafter remarried. Some five years later, in 1978, the first wife commenced an action wherein she sought, *inter alia,* a judicial declaration that she was the lawful wife of the defendant. However, the plaintiff did not also request a divorce, separation or annulment. Subsequent to the effective date of the Equitable Distribution Law, the plaintiff wife moved to discontinue the action without prejudice to her instituting a new action in which she would also seek a divorce. The defendant opposed her request asserting that equitable distribution is unavailable in any action commenced prior to the effective date of part B of section 236 of the Domestic Relations Law. In affirming Special Term's order granting the plaintiff's motion, a majority of the First Department noted that the declaratory judgment complaint did "not fall within the scope of part A of section 236 of the Domestic Relations Law" (*Felt v Felt, supra,* p 397) and, in an opinion by Justice Asch, held (p 399):

"Neither plaintiff nor defendant in this matter commenced any action or proceeding described in part A of section 236 prior to July 19, 1980. * * *

"As this court has previously stated: 'It is virtually impossible to state as a general proposition and as a matter of law that *all* prior matrimonial actions, whenever commenced and without regard to whatever action may have been taken, preclude a subsequent application for equitable distribution treatment under part B of section 236 of the Domestic Relations Law. Each case must be resolved on the basis of the facts and circumstances presented.' (*Broder v Broder,* 91 AD2d 302, 306.)

"The facts herein show a complaint for declaratory judgment with respect to the validity of a marriage which is clearly outside the boundaries set for part A of section 236 actions. Plaintiff is not precluded therefore, under the circumstances herein, from discontinuing this action and commencing an action pursuant to the provisions of part B of section 236".

Quite obviously, the Dominican Republic divorce proceeding in *Felt* (*supra*) was commenced prior to the effective date of part B of section 236 of the Domestic Relations Law. In spite of that undisputed fact, the plaintiff was permitted to pursue her divorce action seeking equitable distribution relief.

A reading of the language of section 236 (part B, subd 2) of the Domestic Relations Law leads us to conclude that, when faced with a declaratory action under section 236 (part B, subd 2) of the Domestic Relations Law, it is that action which must be "commenced on and after the effective date" of the Equitable Distribution Law and that the date of the foreign divorce judgment under attack is not controlling, and it would appear that the *Felt* court read the language in the same way.

While it is true that the facts at bar (parties lived together following entry of a foreign bilateral divorce decree) are not the mirror image of those in *Felt* (husband remarried, lived apart and paid alimony to "ex-wife" following entry of foreign decree), the conclusion reached in that case is equally applicable to the defendant's final argument herein and we adopt it.

Before leaving this point, we would note that we are not dealing with a proceeding commenced "to obtain maintenance or a distribution of marital property following a foreign judgment of divorce" (Domestic Relations Law, § 236, part B, subd 2). It has been suggested in the Practice Commentaries (Scheinkman, Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law, C236B:3, 1983-1984 Pocket Part, p 138) "that to allow equitable distribution following a foreign divorce which pre-dates Part B's effective date would lead to an inequitable result; New York actions commenced before the effective date would not be subject to Part B but parties to foreign actions commenced before the effective date could obtain Part B relief. In keeping with the pronounced intent of the Legislature to apply Part B only to actions or proceedings commenced on or after the effective date, subdivision 2 should be construed as permitting post-foreign divorce relief only where the foreign divorce proceedings were commenced on or after July 19, 1980."

Assuming, *arguendo,* that the Legislature did not intend what has been characterized as an "inequitable" result, the fact remains that we are here faced with a situation where the plaintiff does not seek to rely on the foreign divorce for relief. Rather, she asks that such divorce be declared a nullity and that as a person still validly married to defendant she now be granted a New York divorce under part B. Plaintiff seeks only to be treated as any other married person who commences an action for divorce subsequent to the enactment of part B of section 236 of the Domestic Relations Law. Whether she will ultimately succeed in establishing that the Mexican divorce was a nullity and that she is entitled to a New York divorce, is not the issue now before us. All that we are called upon to decide is whether part A or part B of section 236 of the Domestic Relations Law controls and, as we have stated, *supra,* in our judgment, part B governs in this case.

Our holding herein does not mean that maintenance awards should be made in all cases wherein a foreign judgment of divorce is being attacked. Certainly, upon being made aware of the existence of a prior divorce judgment, a court should have more before it than a bare allegation that a foreign divorce judgment is a nullity or a simple request for a declaration that the parties' "marriage" is valid before an award of temporary maintenance is made. Section 236 (part B, subd 2) of the Domestic Relations Law authorizes the courts of this State to make an award in the exercise of their discretion. The statute is by no means mandatory. Nevertheless, we are satisfied that under the unusual circumstances of this case wherein the wife claims that the husband, employing fraud, induced her to obtain the Mexican divorce and the parties have admittedly not only had a child but also lived together as husband and wife for almost 10 years following entry of their Mexican divorce decree, Special Term was correct in granting the plaintiff an interim award for maintenance.

We have reviewed the other points raised by defendant on this appeal and find them to be without merit. Accordingly, the order should be affirmed insofar as appealed from.

GIBBONS, J. P., BRACKEN and O'CONNOR, JJ., concur.

Order of the Supreme Court, Nassau County, dated October 11, 1983, affirmed insofar as appealed from, without costs or disbursements.