C. Lynn Elson, Appellant, v Barry R. Elson, Respondent.

Second Department, August 28, 1989

### APPEARANCES OF COUNSEL

*Moran & Brodrick (Leslie K. Rothkopf* of counsel), for appellant.

*Shea & Gould (Jacalyn F. Barnett* and *Jocelyn C. Delbaum* of counsel), for respondent.

### OPINION OF THE COURT

BALLETTA, J.

In this case a question has arisen as to the impact an out-of-State divorce decree has upon a party's subsequent claim for equitable distribution in this State. We hold that where the foreign divorce decree was rendered prior to July 19, 1980, and it is not set aside, a party may not maintain a claim for equitable distribution under Domestic Relations Law § 236 (B).

After having resided in the State of Colorado for two years, the defendant husband in this action obtained a divorce in that State. The divorce decree was dated December 28, 1979, some seven months prior to the effective date of the Equitable Distribution Law in this State. The plaintiff wife had never

resided in Colorado and had never appeared in the Colorado action. A subsequent Colorado court order directed the defendant to pay child support in the sum of $300 per month. On or about June 25, 1986, the plaintiff commenced the instant action seeking, *inter alia,* a divorce on the ground of abandonment, equitable distribution of the marital property, and maintenance and child support. Additionally, the complaint sought similar economic relief in the event the court found that the foreign divorce decree was valid.

Specifically, the plaintiff's second cause of action alleged:

"TENTH: The plaintiff herein did not appear in [the Colorado] action and was not served with any process or papers whatsoever within the State of Colorado.

"ELEVENTH: That said divorce was and is colorable and is of no force and effect in law for the purpose of establishing the plaintiff's right to maintenance and the distribution of marital property in that the plaintiff was at no time subjected to the personal jurisdiction of the Courts of Colorado".

The third cause of action was for support under the Family Court Act article 4, and the fourth cause of action was a claim for necessaries in the sum of $100,000.

In her "wherefore" clause to the complaint, the plaintiff requested, *inter alia,* a judgment:

"1. For an absolute divorce * * *

"8. Or, in the alternative, in the event that the Court should determine that the plaintiff's marriage to the defendant was heretofore terminated, then in that event, the plaintiff requests that the Court distribute the parties' marital property and fix maintenance and child support pursuant to Sections 236B of the Domestic Relations Law".

The Supreme Court, Suffolk County, granted the defendant's motion to dismiss the plaintiff's action for a New York divorce and related relief essentially on the grounds that the plaintiff had failed to challenge the validity of the Colorado divorce, that the Colorado divorce decree was entitled to full faith and credit, and that the plaintiff was guilty of laches. The plaintiff appealed.

■ As a general rule, pleadings are not to be dismissed merely because they are inartfully drawn *(Macey v New York State Elec. & Gas Corp.,* 80 AD2d 669), and affidavits may be used freely upon a motion to dismiss in order to preserve inartfully pleaded, but potentially meritorious, claims by remedying the defects in the complaint *(Rovello v Orofino Realty*

*Co.,* 40 NY2d 633, 635-636). In this case, the plaintiff stated in her affidavit in opposition to the motion to dismiss: "4. I have never stepped foot into the State of Colorado. * * * I 'did not appear in person or by attorney.' I have never accepted the jurisdiction of the Colorado Courts. * * * The Colorado Courts have never had personal jurisdiction over your deponent. I have brought the instant action for a declaration of the validity of the Colorado decree and for an adjudication of my economic and property rights in the State of New York where proper jurisdiction exists".

At her pretrial deposition, the plaintiff also identified a document as the "complaint I filed as a Plaintiff. It was an action for divorce at the time to determine legally that the divorce had been, in fact, granted".

Domestic Relations Law § 236 (B) lists the types of actions which fall within the scope of the Equitable Distribution Law: "2. Matrimonial actions. Except as provided in subdivision five of this part, *the provisions of this part shall be applicable to actions* for an annulment or dissolution of a marriage, for a divorce, for a separation, for a declaration of the nullity of a void marriage, *for a declaration of the validity or nullity of a foreign judgment of divorce,* for a declaration of the validity or nullity of a marriage, and to proceedings to obtain maintenance or a distribution of marital property following a foreign judgment of divorce, *commenced on and after the effective date of this part.* Any application which seeks a modification of a judgment, order or decree made in an action commenced prior to the effective date of this part shall be heard and determined in accordance with the provisions of part A of this section" (emphasis supplied).

While the language used by the plaintiff is often ambiguous, when one reads the complaint as a whole in conjunction with her affidavit and deposition testimony, it becomes apparent that the plaintiff sought a declaration as to the validity of the Colorado divorce. Clearly, such a cause of action is covered by the statute *(see, Felt v Felt,* 93 AD2d 396, *affd* 62 NY2d 691). Since pleadings are to be liberally construed and there is no showing of prejudice to the defendant, the defect in the complaint should have been ignored *(see,* CPLR 3026; *see also, Foley v D'Agostino,* 21 AD2d 60, 64-65).

However, although the ambiguities in the plaintiff's pleading have been resolved, another problem remains. The Supreme Court correctly determined that the Colorado divorce

decree was entitled to full faith and credit to the extent that it affected the marital res *(see, Vanderbilt v Vanderbilt,* 354 US 416; *Estin v Estin,* 334 US 541; *Lansford v Lansford,* 96 AD2d 832). Such a determination not only leads logically to the dismissal of the plaintiff's first cause of action for a divorce, but it also has a serious impact on the plaintiff's claim for equitable distribution under the second cause of action.

■ The problem becomes apparent in light of the language of Domestic Relations Law § 236 (B) (2) which limits equitable distribution to certain types of actions "commenced on and after the effective date of this part," i.e., July 19, 1980. This limitation represented a major policy decision by the Legislature against retroactive application of the Equitable Distribution Law *(see,* Foster, *Commentary on Equitable Distribution,* 26 NY L Sch L Rev 1, 2). "On approval of the legislation by the Governor, July 19, 1980 became the watershed; property rights in actions commenced prior to that date are to be resolved in accordance with the law as set out in [Domestic Relations Law § 236] part A; only actions commenced subsequent to that date are subject to the equitable distribution provisions contained in part B" *(Valladares v Valladares,* 55 NY2d 388, 391; *see also, Tucker v Tucker,* 55 NY2d 378).

With respect to divorces within New York State, therefore, it is quite clear that "[t]he statute does *not* apply retroactively to agreements and decrees executed or entered before July 19, 1980, and such agreements or decrees come within the purview of Domestic Relations Law § 236 (A)" *(see,* 3 Foster, Freed and Brandes, Law and the Family New York § 1:1, at 12 [2d ed]). The same rule should also apply to valid out-of-State divorce decrees made prior to July 19, 1980.

In *Lavi v Lavi* (103 AD2d 400), the plaintiff wife obtained a Mexican divorce in 1969, and thereafter, in 1983, commenced an action in New York for divorce, or, in the alternative, to set aside the Mexican divorce and to declare the validity of the parties' marriage. This court affirmed an order of the Supreme Court granting the plaintiff pendente lite relief, finding that the wife's complaint had set forth a "matrimonial action" as that term was defined in Domestic Relations Law § 236 (B) (2) *(Lavi v Lavi, supra,* at 404-405). In doing so, this court rejected the defendant husband's argument that since the foreign divorce was obtained prior to 1980, the 1983 proceeding was thus governed by the preequitable distribution provisions of Domestic Relations Law § 236 (A):

"A reading of the language of section 236 (Part B, subd 2) of the Domestic Relations Law leads us to conclude that, when faced with a declaratory action under section 236 (part B, subd 2) of the Domestic Relations Law, it is that action which must be 'commenced on and after the effective date' of the Equitable Distribution Law and that the date of the foreign divorce judgment under attack is not controlling, and it would appear that the *Felt* court read the language in the same way. * * *

"Before leaving this point, we would note that we are not dealing with a proceeding commenced 'to obtain maintenance or a distribution of marital property following a foreign judgment of divorce' (Domestic Relations Law, § 236, part B, subd 2) * * * the fact remains that we are here faced with a situation where the plaintiff does not seek to rely on the foreign divorce for relief. Rather, she asks that such divorce be declared a nullity and that as a person still validly married to defendant she now be granted a New York divorce under part B. Plaintiff seeks only to be treated as any other married person who commences an action for divorce subsequent to the enactment of part B of section 236 of the Domestic Relations Law * * * and, as we have stated, *supra,* in our judgment, part B governs in this case" *(Lavi v Lavi, supra,* at 407-408).

The *Lavi* court did not expressly determine the issue that we face in the instant case, i.e., where the pre-1980 foreign divorce decree is held to be valid, is the plaintiff entitled to equitable distribution? The Practice Commentaries to Domestic Relations Law § 236 (Scheinkman, Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C236B:3, at 184-186), suggest that the answer ought to be "No":

"In the discussion above, it was stated that maintenance would be available in the declaratory judgment action where the action was commenced on or after July 19, 1980, even if the [foreign] divorce was procured before that date. As also noted, however, equitable distribution itself would not be available if the decree is held invalid unless the marriage was otherwise terminated. If the decree is valid, equitable distribution would be available—but with a catch. To obtain equitable distribution, the foreign judgment must have been rendered in a proceeding commenced on or after July 19, 1980. Subdivision 2 of Part B of DRL § 236 stipulates that the listed actions must have been 'commenced on and after the effective date of

this part'—i.e., July 19, 1980. The statute appears on its face only to require that the New York post-divorce relief proceeding be commenced on or after July 19, 1980. However, to allow equitable distribution following a foreign divorce which pre-dates Part B's effective date would lead to an inequitable result; New York actions commenced before the effective date would not be subject to Part B, but parties to foreign actions commenced before the effective date could obtain Part B relief. In keeping with the pronounced intent of the Legislature to apply Part B only to actions or proceedings commenced on or after the effective date, subdivisiion 2 should be construed as permitting post-foreign divorce relief only where the foreign ivorce proceedings were commenced on or after July 19, 1980.

"This was the approach adopted in *[Ramirez De] Bouhana v. Bouhana,* 112 Misc.2d 314, 447 N.Y.S.2d 115, (Sup.Ct., Suffolk County 1982). In that case, it was the party who procured the foreign divorce prior to the enactment of the Equitable Distribution Law who desired to obtain financial benefits. The request for equitable distribution was denied on the ground that the party was seeking rights which did not exist at the time the foreign action was commenced. * * *

"The requirement found in *[Ramirez De] Bouhana*—that to obtain equitable distribution following a valid foreign divorce judgment, the foreign divorce action must have been commenced on or after July 19, 1980—is not inconsistent with *Lavi v. Lavi,* 103 A.D.2d 400, 480 N.Y.S.2d 338 (2nd Dept.1984) discussed supra. In *Lavi,* the Court took note of the suggestion that it might be an inequitable result to allow equitable distribution after a foreign judgment of divorce where the foreign proceeding was commenced before July 19, 1980, while refusing equitable distribution after a New York action commenced before July 19, 1980. However, as the *Lavi* Court stressed, the plaintiff there was asserting the invalidity of the foreign decree. If that decree was held invalid and null, the plaintiff would occupy the same position as any other divorced plaintiff in an action commenced in New York following the July 19, 1980 effective date of the Equitable Distribution Law. The *Lavi* Court noted that whether the plaintiff would ultimately succeed on her claim that the Mexican divorce was a nullity and that she was entitled to a New York decree was not the issue then before the Court. It is suggested, however that if the plaintiff fails in her attack upon the Mexican decree, then equitable distribution would be pre-

cluded under the rationale stated above and in the *[Ramirez De] Bouhana* case, 112 Misc.2d 314, 447 N.Y.S.2d 115 (Sup.Ct.Suffolk County 1982), supra".

In addition to *Ramirez De Bouhana v Bouhana (supra)* discussed above in the Practice Commentaries, the case of *Kiss v Kiss* (132 Misc 2d 368), also held that where the foreign divorce was obtained prior to July 19, 1980, the wife was not entitled to equitable distribution even though she had commenced the New York proceeding in 1984: "the Legislature surely did not intend to confer on parties to a foreign divorce additional rights which are not available to those who secure divorce judgments within New York State *(see, Lavi v Lavi,* 103 AD2d 400, 407). Yet, were this court to permit the petitioner wife to maintain the instant proceeding for equitable distribution, such an inequity would result; that is, the petitioner who commenced and secured a foreign divorce prior to July 19, 1980, would obtain relief under Domestic Relations Law § 236 (B) which relief would simply not have been available to her had she commenced the same action in this jurisdiction. This the court will not do. Since she had no right to equitable distribution under New York laws at the time she commenced her foreign divorce action, the petitioner wife is now precluded from seeking such relief *([Ramirez] De Bouhana v Bouhana, supra,* at p 316)" *(Kiss v Kiss, supra,* at 370).

This approach seems to have been adopted by the Appellate Division, First Department. In *Geiser v Geiser* (115 AD2d 373), the husband obtained a divorce in New Jersey in 1979. The wife thereafter commenced an action in New York in 1985 seeking, *inter alia,* equitable distribution. The Appellate Division, First Department, affirmed an order dismissing her first cause of action for equitable distribution, stating in part: "there can be no [equitable] distribution where, as here, the foreign action was terminated prior to the enactment of the Equitable Distribution Law *(see, Ramirez De Bouhana v Bouhana,* 112 Misc 2d 314, 316)" *(Geiser v Geiser, supra,* at 374-375).

As a leading commentator has explained: "there is an expansion [in the provisions of Domestic Relations Law § 236 (B) (2)] of post-divorce relief following an out-of-state divorce if [the action for] such divorce was commenced on or after July 19, 1980. Foreign judgments entered in actions commenced before July 19, 1980 are under the prior law insofar as post-divorce relief is concerned. This means that Part A of DRL

section 236 * * * and related cases control. If the foreign decree was entered in an action commenced on or after July 19, 1980, Part B controls. This is yet another example of the legislative intent to avoid retroactive operation for Part B" *(see,* Foster, *Commentary on Equitable Distribution,* 26 NY L Sch L Rev 1, 12-13).

Accordingly, in view of the validity of the 1979 Colorado judgment of divorce, the plaintiff may not now assert her claim for equitable distribution *(see, Geiser v Geiser,* 115 AD2d 373, *supra; Kiss v Kiss,* 132 Misc 2d 368, *supra; Ramirez De Bouhana v Bouhana,* 112 Misc 2d 314, *supra).*

However, to the extent that the plaintiff's second cause of action sets forth a claim for maintenance, it may be reinstated. Although the Colorado divorce decree is entitled to full faith and credit insofar as it terminated the marital relationship of the parties *(see, Vanderbilt v Vanderbilt,* 354 US 416, *supra),* it did not affect the plaintiff's rights to maintenance since the Colorado courts did not have in personam jurisdiction over her *(see, Bennett v Bennett,* 103 AD2d 816; *see also, Lansford v Lansford,* 96 AD2d 832, *supra).* "[P]ursuant to current New York statutory law, the court may award alimony or maintenance notwithstanding the previous entry of a valid foreign judgment of divorce" *(see, Bennett v Bennett, supra,* at 817).

█ Turning now to the plaintiff's third and fourth causes of action, the Supreme Court erred in determining, as a matter of law, that the plaintiff was barred by laches from asserting these claims. The plaintiff alleged in her affidavits, and testified at her examination before trial, that there had been ongoing settlement negotiations between the parties throughout the years, and that the parties had indicated their preference to stay out of court. The defendant did not dispute these allegations other than to say that the plaintiff had never applied to the court for a modification of the payments of child support pursuant to the Colorado decree. Therefore, there is a triable issue of fact as to whether the plaintiff's conduct constituted laches.

Accordingly, the order is modified (1) by deleting the provision granting those branches of the defendant's motion which were to dismiss the third and fourth causes of action and substituting therefor a provision denying those branches of the motion, (2) by deleting the provision granting that branch of the motion which was to dismiss that portion of the second

cause of action which was for maintenance and substituting therefor a provision denying that branch of the motion, and (3) by deleting the provision denying the cross motion. As so modified, the order is affirmed, with costs to the plaintiff, and the matter is remitted to the Supreme Court, Suffolk County, for further proceedings consistent herewith.

THOMPSON, J. P., RUBIN and SPATT, JJ., concur.

Ordered that the order is modified (1) by deleting the provision granting those branches of the defendant's motion which were to dismiss the third and fourth causes of action and substituting therefor a provision denying those branches of the motion, (2) by deleting the provision granting that branch of the motion which was to dismiss that portion of the second cause of action which was for maintenance and substituting therefor a provision denying that branch of the motion, and (3) by deleting the provision denying the cross motion; as so modified, the order is affirmed, with costs to the plaintiff, and the matter is remitted to the Supreme Court, Suffolk County, for further proceedings consistent herewith.