**Miriam K. KAHN, Plaintiff,**

**v.**

**Alfred J. KAHN and Teachers Insurance and Annuity Association and College Retirement Equities Fund, Defendants.**

**No. 89 Civ. 6701 (GLG).**

United States District Court,
S.D. New York.

Aug. 27, 1992.

**1238**

Miriam K. Kahn, pro se.

Opton, Handler, Gottlieb, Feiler, Landau & Hirsh, New York City (Stephen H. Kahn, Richard Lee Wallace, of counsel), for defendant Alfred J. Kahn.

Carpenter, Bennett & Morrissey, Newark, N.J. (Laurence Reich, Jane Andrews Lalli, of counsel), Stephens, Buderwitz & Baroni, White Plains, N.Y., (Mark M. McMillin, of counsel), for defendant Teachers Ins.

## OPINION

GOETTEL, District Judge.

## I. FACTUAL BACKGROUND

This case involves a struggle between plaintiff Miriam K. Kahn and her former husband, defendant Dr. Alfred J. Kahn, over the future of certain pension benefits. Plaintiff, who is now seventy years old and a resident of New York, married Alfred Kahn in 1949. After providing economic support for the first three years of their marriage while her husband obtained his doctoral degree, plaintiff put aside her career to become a homemaker and raise their family.

Over the next forty years, Alfred Kahn pursued a successful career as a tenured professor at Columbia University and an international social policy consultant. During the course of his employment at Columbia University, Dr. Kahn was issued a deferred fixed-type retirement annuity contract in 1947 by defendant Teachers Insurance and Annuities Association and College Retirement Equities Fund (hereinafter

"TIAA") and a College Retirement Equities Fund ("CREF") variable-type retirement annuity contract in 1953. Premiums for both annuity contracts were paid by Columbia University as part of defendant's compensation.

In 1974, after twenty-five years of marriage, defendant Alfred Kahn brought an action for divorce in the Supreme Court of New York, Westchester County claiming cruel and inhuman treatment. After a full trial, the court denied Dr. Kahn's request for divorce. Instead, the court ordered Dr. Kahn to restore to Mrs. Kahn half the proceeds of a joint bank account that he had closed out. It also ordered him to pay past support for a twenty-six month period and future spousal support of $500 per week.

Dr. Kahn's motion for reargument was denied. The Appellate Division, Second Department, modified the judgment by reducing the prior support award. *See Kahn v. Kahn*, 55 A.D.2d 638, 390 N.Y.S.2d 160 (2nd Dep't 1976). The 1976 judgment, as modified, was affirmed by the New York Court of Appeals which held that the Kahns "marital relationship has not been legally altered" and "the parties remain husband and wife in contemplation of the law." *Kahn v. Kahn*, 43 N.Y.2d 203, 401 N.Y.S.2d 47, 50, 371 N.E.2d 809, 812 (1977).

After the New York proceedings came to a close, Dr. Kahn moved to Cliffside Park, New Jersey. In 1979, he brought an action for a "no fault" divorce in New Jersey and obtained by default a divorce decree. Plaintiff was allegedly served with process in New York but made no appearance in the New Jersey proceeding. In New York, she sought unsuccessfully to enjoin the New Jersey proceeding arguing that Dr. Kahn was not a *bona fide* resident of New Jersey. A final judgment of divorce was granted by the Superior Court of New Jersey in April 1980. *See Kahn v. Kahn*, No. M–1666–79 (Super.Ct.Bergen County) (Order, Calissi, J.).

Subsequent to the New Jersey action, plaintiff brought an action against Dr. Kahn following his default in payment of support. The Westchester Family Court issued an Income Deduction Order directing Columbia University to deduct $500 per week from Dr. Kahn's paychecks and pay it to plaintiff as support. The Appellate Division, First Department, affirmed the Income Deduction Order. *See Kahn v. Trustees of Columbia Univ.*, 109 A.D.2d 395, 492 N.Y.S.2d 33 (1st Dep't 1985). In two later decisions, the Appellate Division, Second Department, rejected attempts by Dr. Kahn to avoid continued compliance with the income execution and wage deduction orders. *See Kahn v. Kahn*, 137 A.D.2d 746, 525 N.Y.S.2d 59 (2d Dep't 1988); *Schmerer ex. rel. Kahn v. Kahn*, 137 A.D.2d 758, 525 N.Y.S.2d 60 (2d Dep't 1988).

In June 1989, defendant retired from the full-time faculty at Columbia while remaining a part-time member of the faculty and director of the Cross–National Studies of Social Service Systems. The value of his fully vested and matured TIAA–CREF pension at that time was approximately $699,-000. Shortly before his retirement, defendant applied to TIAA–CREF to commence annuity payments under the single life annuity option on July 1, 1989. However, a few years earlier, plaintiff had advised TIAA–CREF in writing that she did not waive, nor intend to waive, the provision of Retirement Equity Act of 1984 ("REACT"), that mandated a joint life and survivor annuity absent a written waiver by the non-pension holding spouse.

In September 1989, plaintiff applied by order to show cause in the Supreme Court, Westchester County, for an order directing TIAA–CREF to only honor an application by Dr. Kahn for annuity payments that provided for joint life and survivor annuity. TIAA–CREF removed that proceeding to this court on October 16, 1989.

In Family Court, Westchester County, plaintiff also sought to enforce a May 1989 Family Court Income Deduction Order (itself an outgrowth of Dr. Kahn's refusal in 1982 to comply with an earlier Family Court order) directing TIAA–CREF as successor garnishee to transmit the $500 per week support to plaintiff. On October 10,

1989, TIAA–CREF removed the Family Court case to this court.

On the same day, TIAA–CREF filed an interpleader complaint in the United States District Court, District of New Jersey, requesting the court to determine whether Dr. Kahn must choose the joint life and survivor annuity option and to declare the respective rights of Dr. Kahn and Mrs. Kahn to the pension annuities. In December 1989, the New Jersey case was transferred to this court and the three cases were consolidated.

In March 1990, this court entered an Interim Order under which TIAA–CREF began paying defendant Kahn a joint life and survivor annuity with Mrs. Kahn named as the second annuitant solely for purposes of establishing the measuring life upon which Dr. Kahn's annuity payments are calculated. The Interim Order also directed TIAA–CREF to transmit the monthly support payments to plaintiff.[1] At present, plaintiff only receives sums from TIAA–CREF which represent her $500 weekly support from Dr. Kahn.

## II. DISCUSSION

Plaintiff has moved for summary judgment pursuant to REACT seeking a court order granting her a joint and survivor annuity option under Dr. Kahn's pension, one-half interest in that pension, and a continuing garnishment order over Dr. Kahn's portion of the pension due to his failure to comply with earlier court-ordered payments. Defendant Alfred Kahn has cross-moved for summary judgment for a declaration that plaintiff is not entitled to require him to elect the joint and survivor annuity option. Both parties contend that no genuine issues of material fact exist.

The standards for resolving motions for summary judgment border on common knowledge. To prevail, the moving party must demonstrate "that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The court's function in this regard is not to resolve disputed issues of facts but solely to determine if such genuine issues of fact exist.

All ambiguities must be resolved and all inferences drawn in favor of the party defending against each summary judgment motion. *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985). "Summary judgment is appropriate when, after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Murray v. National Broadcasting Co.*, 844 F.2d 988, 992 (2d Cir.), *cert. denied*, 488 U.S. 955, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988).

It is apparently undisputed that Dr. Kahn's pension plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA") as amended by REACT, 29 U.S.C. § 1001 *et seq.* Cutting through

1. The Interim Order further provided that:
   Should further proceedings among the parties hereto result in a final judgment that Miriam K. Kahn is entitled, under the provisions of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.* ("ERISA"), to require Alfred J. Kahn to elect a qualified joint and survivor annuity, within the meaning of Section 205 of ERISA, 29 U.S.C. § 1055, and should Miriam K. Kahn survive Alfred J. Kahn, benefits under such joint and survivor option will continue to Miriam K. Kahn at two-thirds (reflecting the then-current dividend schedule of TIAA–CREF) for her life, with the contractual beneficiary designation controlling any proceeds under the 20-year guarantee period; but if further proceedings among the parties hereto result in a final judgment that Miriam K. Kahn is not so entitled to require Alfred J.

Kahn to elect a qualified joint and survivor annuity, and Miriam K. Kahn survives Alfred J. Kahn, benefits during the lifetime of Miriam K. Kahn, shall instead be payable to their daughter, Nancy Kahn, or, in the event of her death, to Barry Weissman, or the executor of the estate of Alfred J. Kahn. All such annuities shall keep TIAA–CREF apprised of their respective current addresses. Should Alfred J. Kahn die before the entry of a final judgment in this action, the benefits described in the preceding sentence shall be paid by TIAA–CREF into the Court as such benefits become due monthly during the lifetime of Miriam K. Kahn, such benefits to be disbursed by the Court in accordance with its final judgment.
   *Kahn v. Kahn et al.*, No 89 Civ. 6701 (GLG) (S.D.N.Y. March 7, 1990) (Interim Order).

the history of litigation and bitterness that have plagued the dealings between Mrs. Kahn and Dr. Kahn over the last eighteen years, the primary legal issue in the present case is whether Dr. Kahn should be permitted to elect single annuity pension benefits from defendant TIAA–CREF or must he choose the qualified joint and survivor annuity form of benefits.

In 1984, Congress enacted the Retirement Equity Act of 1984 ("REA"), Pub. L.No. 98–397, 98 Stat. 1426, to expand the rights of participants' spouses under ERISA. *See* 29 U.S.C. § 1055. REA includes a requirement that certain types of pensions, including the TIAA–CREF pensions at issue here, provide a Joint and Survivor Annuity ("JSA") benefits to a participant's spouse. *See* 28 U.S.C. § 1055(a). A participating spouse is not permitted to elect to waive the qualified joint and survivor annuity option unless the non-participant spouse consents in writing to waive JSA benefits. 28 U.S.C. § 1055(c)(2).

The first issue presented by these summary judgment motions is whether a participant's former spouse has a right under REA to JSA benefits. Defendant argues that after the 1980 New Jersey divorce judgment Mrs. Kahn can no longer be considered his "spouse" under ERISA. Thus, he argues, plaintiff is not entitled to invoke REA to compel him to choose the JSA option. Since 1974, plaintiff has doggedly contested Dr. Kahn's efforts to divorce her. Besides challenging the validity of the New Jersey judgment of divorce, plaintiff argues that her status as defendant's spouse remains unchanged despite the *ex parte* divorce which allows either individual to remarry legally.

Unfortunately, ERISA does not define the term "spouse." Defendant suggests that where a term used in ERISA is undefined, the Supreme Court has counseled that:

> [w]here Congress uses terms that have accumulated settled meaning under … the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms …

*Nationwide Mutual Ins. Co. v. Darden,* —— U.S. ——, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992). Citing *Black's Law Dictionary* (5th Ed. 1979) and *Webster's Third New International Dictionary,* defendant argues that the common law meaning of "spouse" is settled, straightforward, and dispositive: "spouse" means a man or woman joined in wedlock, in short, one's husband or wife. Applying these definitions, says defendant, avoids the confusion of recognizing multiple spouses, all with equal claims to JSA benefits. Applying it to this case, defendant contends that the New Jersey divorce judgment legally severed the spousal connection between them.

Plaintiff sharply disputes the application of this bright-line test. In contrast, she argues that, under the divisible divorce doctrine, the *ex parte* divorce defendant obtained in New Jersey without personal jurisdiction over her has no impact upon her legal rights as a spouse to share in the pension.

Since the Supreme Court decided *Williams v. North Carolina,* 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945), *ex parte* divorce decrees have been given full faith and credit in New York as far as the marital status had been adjudicated. *See Radcliffe v. Radcliffe,* 137 Misc.2d 859, 522 N.Y.S.2d 823, 825 (Sup.Ct.1987). Here, we have an unusual situation. The courts in New York held that Dr. Kahn failed to sufficiently prove the cruel and inhuman treatment he argued was grounds for a divorce. In so doing, they ordered Dr. Kahn to make certain support payments to plaintiff. Some time during this process, Dr. Kahn moved to New Jersey. After establishing residency, he successfully sought a no-fault divorce.

■ Because New Jersey had no personal jurisdiction over Mrs. Kahn, even if the New Jersey judgment of divorce is deemed valid, Dr. Kahn would have to make the support payments called for by the New York orders notwithstanding his *ex parte* divorce. *See Simons v. Miami Beach Nat. Bank,* 381 U.S. 81, 84, 85 S.Ct. 1315, 1317, 14 L.Ed.2d 232 (1965). Since New Jersey lacked personal jurisdiction over Mrs.

Kahn, it had no power to extinguish any rights that the New York court recognized she had under New York law. *See Vanderbilt v. Vanderbilt,* 354 U.S. 416, 418, 77 S.Ct. 1360, 1362, 1 L.Ed.2d 1456 (1957); *Estin v. Estin,* 334 U.S. 541, 548–49, 68 S.Ct. 1213, 1218–19, 92 L.Ed. 1561 (1948). The pre-existing New York separation decrees, the result of proceedings at which both parties were present, imposed obligations on defendant enforceable by a court in New York, even now, without offending the full faith and credit due to the New Jersey judgment, assuming it to be valid. *Simons,* 381 U.S. at 84, 85 S.Ct. at 1317.

Full faith and credit must only be given to that portion of the New Jersey divorce judgment over which that court possessed the power to adjudicate. *See Estin,* 334 U.S. at 549, 68 S.Ct. at 1218. Whether defendant likes it or not, the balancing of each court's obligation to give full faith and credit to the other, to the extent each had jurisdiction, in effect creates a divisible divorce. *Id.* Accommodating the interests of both New York and New Jersey gives effect to both the New York separation orders and New Jersey's judgment to the extent each had jurisdiction. New York implicitly recognized this when it denied plaintiff's application to permanently enjoin Dr. Kahn from pursuing any divorce action in New Jersey. *See Kahn v. Kahn,* No. 21707/79 (Sup.Ct. New York County) (Order January 1980).

■ Naturally, a balancing of interests presupposes that the New Jersey judgment of divorce was valid. The judgment could be nullified by collateral attack in this court if there had been fraud in the purported establishment of residence by Dr. Kahn or improper service of process upon the plaintiff, either vitiating the court's jurisdictional foundation. *See Chenu v. Bd. of Trustees,* 12 A.D.2d 422, 212 N.Y.S.2d 818, 820 (Sup.Ct.1961), *aff'd,* 11 N.Y.2d 688, 225 N.Y.S.2d 760, 180 N.E.2d 913 (1962). Absent some basis for impeaching the New Jersey judgment, it must receive the full faith and credit to which it is entitled. *Id.* 212 N.Y.S.2d at 821.

Here, plaintiff has alleged that Dr. Kahn fraudulently obtained the New Jersey judgment of divorce. She argues that Dr. Kahn wrongfully passed off his brother's New Jersey address as his own. Plaintiff also contends that Dr. Kahn failed to advise the New Jersey court about the denial of a divorce in New York. Further, she maintains that defendant did not inform the New Jersey court of his substantial arrears in support obligations to plaintiff, arrears that were the subject of a then-pending New York action. From all this, plaintiff argues, the New Jersey judgment was rendered without jurisdiction and constituted a fraud on her and the state of New York.[2] Plaintiff also contends that she was never served with process for the New Jersey action as defendant contends in the Supreme Court in Westchester, New York.

The bulk of plaintiff's arguments, rather than stating a fraud claim, represent collateral attacks on the New Jersey judgment on grounds of lack of personal jurisdiction. As we stated earlier, lack of personal jurisdiction over Mrs. Kahn does not invalidate the New Jersey divorce judgment. Rather, it makes the divorce *ex parte,* limiting its effect to the marital status.

■ The only argument that appears to strike directly at the validity of the New Jersey judgment of divorce is her claim

---

**2.** Although plaintiff made no allegations that Dr. Kahn fraudulently represented his domicile as New Jersey, the question of domicile in an *ex parte* divorce proceeding is open to collateral attack in a sister state. If Dr. Kahn's was found to lack a New Jersey domicile, the New Jersey judgment would not be entitled to full faith and credit from either this court or the New York courts. *See Rosenstiel v. Rosenstiel,* 368 F.Supp. 51, 57 (S.D.N.Y.1973), *aff'd without op.,* 503 F.2d 1397 (2d Cir.1974).

However, even had plaintiff challenged Dr. Kahn's domicile, normally an issue of fact, no evidence exists from which to infer anything but the intention of Dr. Kahn to permanently domicile in New Jersey where he has lived uninterruptedly since 1978. Nor is there any evidence that he maintains multiple residences or plans to move elsewhere in the future. Moreover, fraud in obtaining a divorce must be raised as an affirmative defense or on direct appeal. *Id.* at 59–60.

that Dr. Kahn fraudulently represented his residence to be his brother's address. If true, the New Jersey court's subject matter jurisdiction may have rested on a fraud by Dr. Kahn regarding the length of his residency in New Jersey prior to commencement of his divorce action. Aside from questioning the propriety of a federal court deciding the validity of a foreign judgment of divorce, plaintiff's claims of fraudulent acquisition of jurisdiction by Dr. Kahn appear barred by New York's six-year residual statute of limitations. *See* Scheinkman, Practice Commentary, 14 McKinney's Cons. Laws of N.Y. Domestic Relations Law § 236 at p. at 188–89 (McKinney's 1986). Nothing in the record suggests that plaintiff was unable to collaterally attack the validity of the New Jersey judgment in a New York court during the intervening twelve years.

Plaintiff also argues that the various Appellate Division decisions that post-dated the New Jersey judgment implicitly recognized her continued status as the spouse of Dr. Kahn. She highlights their repeated use of such terms as "wife," "spouse," and "husband" to support her contention. We do not share plaintiff's reading of these decisions. Whether such terms were used out of convenience or imprecision, we do not interpret their use to mean that any of these courts implicitly adjudged the New Jersey judgment to be invalid. The validity of the New Jersey divorce was neither before those courts nor at all relevant to their decisions. Valid or not, the New York courts could enforce their earlier support orders.

■■■ Recognizing the validity of the New Jersey judgment does not necessarily mean that plaintiff loses all entitlement to a share of defendant's pension. New York courts have held that a party may not be deprived of a property interest by a foreign court lacking personal jurisdiction. *See id.* As we noted earlier, when personal jurisdiction is lacking over one of the parties, an

*ex parte* divorce only has the effect of adjudicating marital status. *See Peterson v. Goldberg,* 180 A.D.2d 260, 585 N.Y.S.2d 439, 439 (2nd Dep't 1992); *Radcliffe,* 522 N.Y.S.2d at 825 (citing *Williams,* 325 U.S. 226, 65 S.Ct. 1092). The New Jersey judgment, however, did not itself directly deprive plaintiff of any property interests arising out of the Kahn's marital relationship. It merely declared the Kahn's formally divorced. In practical terms, New Jersey's authority to determine the Kahn's marital status might also impact property rights derived from one's status as a current spouse.

■■ Defendant argues that the effect of that judgment of divorce was to relieve him of the obligation under ERISA to choose the JSA pension option. We are constrained to agree. Although the divorce was *ex parte,* the New Jersey court possessed jurisdiction to rule on the Kahn's marital status. It did so, and granted Dr. Kahn a no-fault divorce. The question to be answered is whether Mrs. Kahn's right under ERISA obtain JSA pension benefits rises and falls with her marital status irrespective of the *ex parte* nature of the divorce.

We think the answer is yes. When New Jersey granted Dr. Kahn the divorce which took him six years to obtain, the court formally determined that the Kahns would no longer be husband and wife.[3] Only the legal spouse of a pension participant has the right under ERISA, absent a voluntary waiver, to make the plan participant choose the JSA option.

This case bears some similarity to *Simons,* 381 U.S. 81, 85 S.Ct. 1315, where the Supreme Court held that a former wife had no dower right after her former husband had obtained an *ex parte* divorce. In *Simons,* a wife won a separation decree in New York granting her alimony. She then attempted to compel a Florida court to recognize her dower right under Florida law

**3.** The various decisions by New York courts subsequent to the New Jersey judgment of divorce do nothing to undermine this conclusion. Although their use of words like "spouse" and "husband and wife" may have been imprecise or

misleading, the issue of the Kahn's marital status was not before them. We assume such terms were used more as convenient identifiers of each of the parties than as legal conclusions concerning the status of Mrs. Kahn.

after her former husband, now deceased, had earlier obtained a valid divorce there. The Court found that nothing in the divorce decree created or preserved any dower interests in any property, and that even if otherwise, no dower right survived the Florida divorce judgment. *See id.* at 84–85, 85 S.Ct. at 1317–18.

We hold similarly in this case. Plaintiff's spousal right under ERISA to JSA benefits did not survive the New Jersey judgment of divorce. Nothing in ERISA's language can be reasonably interpreted to allow divorced wives the same right as spouses to compel the JSA option unless a QDRO had been issued. Unlike other cases referred to the parties, it does not appear that Dr. Kahn, prior to his retirement in 1989, had designated plaintiff as his survivor beneficiary. In short, the New Jersey divorce judgment terminated Mrs. Kahn's legal status as "spouse" for purposes of the JSA requirement under ERISA. We also note that the New Jersey divorce decree pre-dated REA by four years. As a result, after April 1980, plaintiff maintained no right under ERISA to compel the JSA option upon him.

Plaintiff argues that "a foreign ex-parte divorce does not affect the rights of a spouse that is not subject to the jurisdiction of the sister state." Plaintiff's Memorandum of Law at 25. As *Simons* makes clear, however, this overstates the point. By severing the marital bond, an *ex parte* divorce may affect certain rights which stem from one's status as a current spouse.

■ The object of REA was to better protect women who had contributed to their marriage's financial security through their work in the home, anticipated sharing in the pension income received upon their husband's retirement, but were left inescapably dependent on their husband's earnings, at the mercy of death or divorce. *See Ablamis v. Roper*, 937 F.2d 1450, 1453 (9th Cir.1991) (quoting *Pension Equity For Women: Hearings on H.R. 2100 Before the Subcomm. on Labor–Management Relations of the Committee on Education and Labor*, 98th Cong., 1st Sess. 26 (1983) (statement of Hon. Geraldine Ferraro)).

In short, REA amended ERISA as an attempt to safeguard the financial security of widows and divorcees. *Id.; see also Mackey v. Lanier Collections Agency & Service, Inc.*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988). As the Supreme Court recognized, however, the main thrust of this effort was to free spouses from the anti-garnishment and preemption provisions of ERISA enabling them to enforce domestic support orders—generally, court orders of child support and alimony—by garnishing the participant spouse's pension plan benefits. *See Mackey*, 486 U.S. at 838, 108 S.Ct. at 2190.

Our holding here is not at odds with this idea. We held earlier that plaintiff is fully able to enforce the separation orders granted by the New York courts which include a weekly support payment of five hundred dollars per week.[4] Indeed, she has already done so; Dr. Kahn's pension benefits have been garnished to satisfy his support obligations to plaintiff.

■ The general rule is that a divorce does not affect a beneficiary designation in a life insurance policy. *Fox Valley & Vicinity Const. Wkrs. Pension Fund v. Brown*, 897 F.2d 275, 280 (7th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 67, 112 L.Ed.2d 41 (1990). However, the owner of a policy not covered by REA may be free to change the beneficiary designation absent a separation agreement or court order preventing it.

It also appears that prior to his retirement, Dr. Kahn made no beneficiary designation for his pension. Further, plaintiff was formally divorced from Dr. Kahn in April 1980, four years before REA was enacted. Thus, she had no beneficiary interest in his pension pursuant to REA.

---

4. We note a possible motivation for plaintiff's efforts to ensure Dr. Kahn elects the JSA pension option. The weekly support payments will only last during Dr. Kahn's lifetime. After he passes away, his financial support of her will likely end. However, if he elects the JSA option and plaintiff survives him, even after his death, plaintiff will continue to receive money as a survivor annuity.

Our conclusion that plaintiff retains no right under ERISA to compel Dr. Kahn to elect the JSA does not necessarily dispose of plaintiff's claims to some portion of Dr. Kahn's pension. As defendant correctly notes, "[T]he divisible divorce doctrine means that an *ex parte* divorce ends one's rights as a spouse, but cannot affect one's rights as a former spouse." Defendant Kahn's Memorandum of Law at 18. Moreover, as Justice Harlan reasoned in his concurrence in *Simons,* since Mrs. Kahn was a New York domicile at the time of the *ex parte* New Jersey divorce, if New York law invested her with support rights, those rights "should not be overborne by an *ex parte* decree in another State." *Simons,* 381 U.S. at 87 n. 2, 85 S.Ct. at 1317 n. 2.

■ As plaintiff well knows, the separation orders issued at the conclusion of the New York divorce proceedings were silent as to her rights to her husband's pensions. One may wonder why the New York courts, when formulating the separation orders, did not order Dr. Kahn to elect the JSA option for his pension and name his wife as the beneficiary of the pension. There is a simple though unfortunate answer. At the time of the New York divorce proceedings, after a foreign divorce, a spouse in New York was not entitled to share in pension benefits as part of an equitable distribution of the marital property. Plaintiff forcefully argues that federal and state law now recognize that pensions are co-earned by both spouses. It is now well-settled in New York that marriages are considered to be economic partnerships. *See Peterson,* 585 N.Y.S.2d at 439. In New York, however, recognition of this fact did not produce its complete retroactivity. The right to equitable distribution, codified at Domestic Relations Law § 236(B)(2) [5], only applies to divorce actions "commenced on and after the effective date of this part," *i.e.,* July 19, 1980.

■ The New Jersey judgment of divorce was dated April, 1980, some three months before the statute became effective. New York courts have noted that this limitation represents "a major policy decision by the Legislature against retroactive application of the Equitable Distribution Law." *Elson v. Elson,* 149 A.D.2d 141, 545 N.Y.S.2d 311, 313 (2nd Dep't 1989). Simply put, the statute granting spouses a right to equitable distribution does not apply retroactively to agreements and decrees, including valid foreign divorce judgments, executed or entered before July 19, 1980. *See id.* 545 N.Y.S.2d at 314–15; *see also Geiser v. Geiser,* 115 A.D.2d 373, 495 N.Y.S.2d 401, 402 (1st Dep't 1985).

Although this court might hold a different view on the policy judgment made by the New York legislature, we cannot disturb it. Neither, apparently could the New York courts which granted Mrs. Kahn all that they were permitted to under the law governing at that time: support and the family residence.

■ Section 1056(d)(3)(F) of Title 29 addressing the assignment or alienation of plan benefits states that:

[t]o the extent provided for in any qualified domestic relations order—(i) the former spouse of a participant shall be treated as a surviving spouse of such participant for purposes of section 1055 (and any spouse of the participant shall not be treated as a spouse of the participant for such purposes) of this title.

We read this provision to mean that a former spouse retains the right under REA to survivor benefits if a qualified domestic relations order ("QDRO") provided for such status. A QDRO is defined as "a domestic relations order—(I) which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate

---

**5.** New York Domestic Relations Law § 236(B)(2) states:

Matrimonial action. Except as provided in subdivision five of this part, the provisions of this part shall be applicable to actions for an annulment or dissolution of a marriage, for a divorce, for a separation, for a declaration of the nullity of a void marriage, for a declaration of the validity or nullity of a foreign judgment of divorce, for a declaration of the validity or nullity of a marriage, and to proceedings to obtain maintenance or a distribution of marital property following a foreign judgment of divorce, commenced on and after the effective date of this part [July 16, 1980].

payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan." 29 U.S.C. § 1056(d)(3)(B)(i). The statute defines a domestic relation order as:

> any judgment, decree, or order (including approval of a property settlement agreement) which relates to the provision of ... alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant, and is made pursuant to a State domestic relations law (including a community property law).

29 U.S.C. § 1056(d)(3)(B). Applying these provisions to the present case, plaintiff would possess a right to the JSA if a QDRO was issued at some point during the Kahns' prolonged divorce proceedings which recognized her right under New York law to remain a spouse after the divorce or separation entitling her to a share of Dr. Kahn's pension for purposes of receiving survivor benefits.

Unfortunately, plaintiff was not be entitled to a share of Dr. Kahn's pensions under the New York law on equitable distribution that governed when the New Jersey divorce judgment was entered. As noted above, the governing New York law at that time did not empower the state courts to recognize her right to a portion of Dr. Kahn's pensions. Therefore, none of the prior separation orders could qualify as a QDRO that might have guarded plaintiff's right to the JSA after the New Jersey divorce judgment was issued.

Plaintiff also suggests that inherent in REA is the authority for this court to direct Dr. Kahn to select the JSA option. She points to §§ 1056(d)(3)(B)(i)(I) and (d)(3)(K) to support her claim. Section (d)(3)(K) does include former spouses within its definition of "alternate payee." However, the provision says that only former spouses who are "recognized by a domestic relations order as having a right

to receive all, or a portion of, the benefits payable under a plan with respect to such participant" qualify as an alternate payee.

Under REA, state law is the root of a QDRO since domestic relations orders must be based upon state domestic relations law. *See* 29 U.S.C. § 1056(d)(3)(B)(ii). The prior separation orders, even if deemed a domestic relations order, did not and could not recognize in plaintiff a right to share in Dr. Kahn's pensions given New York law as it stood when New Jersey granted the divorce judgment. Likewise, this court is unable to issue its own QDRO.[6] New York's equitable distribution law did not apply to divorce actions unless they were commenced on or after July 19, 1980. The New Jersey divorce action concluded in April 1980. Thus, the "new" rights of spouses to equitable distribution did not apply to plaintiff, and no QDRO could have been issued recognizing plaintiff's right to a share in the pension.

Accordingly, we are constrained to hold that plaintiff, now the former spouse of Dr. Kahn, retains no rights under REA or New York's Domestic Relations Law to compel Dr. Kahn to select the JSA option for his pensions. Any domestic relations order must be made pursuant to state domestic relations law, and New York's does not recognize a former spouse's right to share in the working spouse's pension if the divorce action commenced before July 19, 1980 as the New Jersey action had.

We recognize that the result here seems overly harsh. Mrs. Kahn is left with no share in her former husband's pensions despite their many years of marriage. If Dr. Kahn passes away before Mrs. Kahn, his obligation to pay support to her may terminate. Yet, this court is not empowered to revisit the state legislature's judgment that its equitable distribution law is not to be applied retroactively.

Mrs. Kahn puts forth the notion that her share in Dr. Kahn's pensions should be

---

**6.** Were we to conclude otherwise and hold that plaintiff had a right to a share of Dr. Kahn's pensions, we would likely have granted plaintiff at least fifty percent of pension benefits. Chasing Dr. Kahn through years of costly litigation to defend against divorce proceedings and later to enforce her support awards have brought

economic hardship to Mrs. Kahn. *See* 3 H. Foster, Jr., D. Freed, and J. Brandes, *Law and the Family New York,* 157. Given this, the length of their marriage, and Dr. Kahn's actions over the years, plaintiff would be equitably entitled to no less than half the pension benefits.

considered "support" under a broad interpretation of that term. New York courts have embraced a broad definition of "support" that confers "wide latitude for judicial discretion." *See, e.g., Kahn v. Trustees of Columbia Univ.* 492 N.Y.S.2d at 37. Plaintiff may be able to incorporate this argument into a motion in state court to increase the support payments she currently receives from Dr. Kahn on equitable grounds to account for health problems, changed needs, or to anticipate provision of basic necessities should he pass away first.

Despite her failure to collaterally attack the validity of the New Jersey action over the past ten years, under New York Domestic Relations Law § 236 Part A, given a valid foreign divorce, plaintiff also might still petition a state court for alimony award based upon need. *See* Scheinkman, *supra*, at 183.

For our purposes, however, because no material issues of fact are in genuine dispute here, we deny plaintiff's summary judgment motion and grant summary judgment in favor of defendant Dr. Kahn. To the extent that the Interim Order directed defendant TIAA–CREF, as garnishee, to transmit plaintiff's monthly support payments to plaintiff directly, we hold that this payment structure shall continue on a permanent basis. The Clerk shall enter judgment for defendant.

SO ORDERED.